UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-30709
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SCOTT CYPRIAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

December 3, 1999

Before DUHÉ, BARKSDALE, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Primarily at issue is whether throwing a three-year-old child toward arresting officers, in an attempt to avoid apprehension for drug trafficking, falls within the "child-use" conduct proscribed by 21 U.S.C. § 861(a)(2) (unlawful to "use ... a person under eighteen years of age to assist in avoiding ... apprehension for" drug trafficking).  Convicted by a jury for conspiracy to possess with intent to distribute cocaine base, for the corresponding substantive offense, and for the earlier-described child-use, Scott Cyprian does *not* contest his intent to distribute conviction.  He does contest his conspiracy and child-use convictions, contending that § 861(a)(2) does *not* apply to the action he took with his child; that there was insufficient evidence to convict him for

either offense; and that there was a prejudicial variance between the indictment and the proof.  We **AFFIRM**.

I.

On 20 February 1998, Melinda James, at Cyprian's behest, met with undercover DEA Agent Honore and, for $6,000, sold him a quarter kilogram of cocaine base (crack).  Part of the transaction was recorded.

Approximately two weeks later, James met with Special Agent Sewell.  After listening to part of the recording of her sale to Agent Honore, James agreed to serve as a confidential informant to assist in Cyprian's arrest.

On 19 March, James met with Cyprian; he informed her that he had crack for sale.  James called Special Agent Sewell, who instructed her to make a crack sale, through Cyprian, to the undercover Agent.  James contacted Cyprian to arrange the sale; at the last minute, Cyprian decided to accompany James in her vehicle to the sale, and brought his three-year-old child.

DEA Agents stopped the vehicle and ordered Cyprian to exit. Cyprian, who had his child in his lap, exited slowly, threw his child at the Agents, and fled.  He was quickly apprehended.  And, upon Cyprian's jacket being searched, 250 grams of crack were found.

In March 1997, as one of three indicted co-conspirators, Cyprian was charged with conspiracy to possess with intent to distribute crack, in violation of 21 U.S.C. § 846; possession with intent to distribute crack, in violation of 21 U.S.C. § 841(a)(1);

and using his child to assist in avoiding apprehension by a federal law enforcement official for the intent to distribute charge, in violation of 21 U.S.C. § 861(a)(2).

A jury trial was held in April 1998. At the conclusion of all the evidence, Cyprian moved for a judgment of acquittal; it was denied. He was convicted on all counts; his two co-defendants, acquitted. In denying Cyprian's post-verdict, second motion for judgment of acquittal, the district court held, *inter alia*, that § 861(a)(2)'s language was unambiguous; and that Cyprian's "use" of his child fell within the conduct proscribed by the statute. Cyprian was sentenced, *inter alia*, to 262 months imprisonment.

## II.

Cyprian does *not* challenge his possession with intent to distribute conviction. For the other two, he claims evidentiary insufficiency, and a prejudicial variance between the indictment and the proof; in addition, for the § 861(a)(2) conviction, that his actions with his child could *not* violate the statute. We address the statutory issue first.

## A.

Section 861, originally codified as 21 U.S.C. § 845b, was enacted as part of

> [t]he Juvenile Drug Trafficking Act of 1986,
> Pub. L. No. 99-570, 100 Stat. 3207-10 (1986),
> [which] represents a congressional recognition
> of the troublesome societal problem created
> *when drug traffickers seek to include minors*
> *in their illegal activities*. As an
> acknowledgment of the facts that youths are
> easily susceptible to outside pressures and in
> an attempt to deter criminals from including
> minors as participants in their illegitimate

activities, Congress enacted several new offenses with *enhanced penalty provisions*.

*United States v. Curry*, 902 F.2d 912, 915-16 (11th Cir. 1990) (emphasis added), *cert. denied*, 498 U.S. 1091 (1991).   Section 861(a) provides:

> It shall be unlawful for any person at least eighteen years of age to *knowingly and intentionally*–
>
> (1) employ, hire, *use*, persuade, induce, entice, or coerce, a person under eighteen years of age *to violate* any provision of this subchapter or subchapter II of this chapter;
>
> (2) employ, hire, *use*, persuade, induce, entice, or coerce, a person under eighteen years of age *to assist in avoiding detection or apprehension* for any offense of this subchapter or subchapter II of this chapter by any Federal, State, or local law enforcement official....

(Emphasis added.)

The requisite *mens rea* for conviction under § 861 ("unlawful for any person at least eighteen years of age to *knowingly and intentionally*" conduct proscribed acts with "person under eighteen years of age" (emphasis added)) is, of course, addressed to the person charged (here, Cyprian, the person at least 18 years of age), *not* the non-charged person under 18 years of age (here, his three-year-old child).  *See, e.g., United States v. Williams*, 922 F.2d 737 (11th Cir.), *cert. denied*, 502 U.S. 892 (1991); *United States v. Valencia-Roldan*, 893 F.2d 1080 (9th Cir.), *cert. denied*, 495 U.S. 935 (1990).  Cyprian does *not* assert otherwise.

Instead, Cyprian contends that his § 861(a)(2) conviction for "using" his child to avoid apprehension is invalid, because his

child did *not* purposefully act to so assist Cyprian. Cyprian's contention is based, in part, on the word "use" being in series with "employ, hire, ... persuade, induce, entice, or coerce", all suggesting that the minor is being paid, forced, or otherwise caused to act with volition to assist another, even if the youth is *not* aware that he is involved in the illegal activity.

Cyprian urges that this aspect — *not* aware of illegal action — is what keeps § 861(a)(2) from being redundant with § 861(a)(1), which uses the same verbs concerning a person over 18 years of age causing another under that age "to violate" the drug trafficking laws. Obviously, in order to make this construction of subpart (a)(2) plausible, Cyprian concomitantly advances a restricted, uncommon definition of "use"; he maintains that it means "taking advantage of a juvenile's lack of intellect or reasoning ability".

For starters, had Congress intended this extremely narrow definition, it would, and could easily, have said so. In any event, the Government counters that volitional conduct by a juvenile is involved in subpart (a)(1), *not* in (a)(2); and that this is what prevents redundancy between these subparts.

This appears to be an issue of first impression for our court. We turn first, of course, to the plain language of the statute. *E.g.*, **Bailey v. United States**, 516 U.S. 137, 145 (1995); **Greyhound Corp. v. Mt. Hood Stages, Inc**., 437 U.S. 322, 330 (1978); **Moosa v. INS**, 171 F.3d 994, 1008 (5th Cir. 1999). Again, subpart (a)(2) provides, in relevant part, that it is "unlawful for any person at least eighteen years of age to knowingly and intentionally ... *use*

... a person under eighteen years of age to assist in avoiding ... apprehension for [a drug trafficking] offense ... by any ... law enforcement official". (Emphasis added.)

Of course, the normal definition of "use" is a far cry from that urged by Cyprian for subpart (a)(2). *Black's Law Dictionary* 1540 (7th ed. 1999) defines "use" as "[t]he application or employment of something". Similarly, "use" is defined in *Webster's Ninth New Collegiate Dictionary* 1299 (9th ed. 1990) as the "act or practice of employing something; ... a method or manner of employing ... something".

As discussed in *Bailey*, 516 U.S. at 145 (definition of "use" in 18 U.S.C. § 924(c)(1), which concerns using or carrying a firearm in a drug trafficking crime), "these various [dictionary] definitions of 'use' imply action and implementation". And, as pointed out in *Bailey*, in addition to looking to the plain meaning, we look to "placement and purpose in the statutory scheme", and "assume that Congress intended each of its terms to have meaning". *Id*. Along this line, "[w]e assume that Congress used two [or more] terms because it intended each term to have a particular, nonsuperfluous meaning". *Id*. at 146.

To give "use" in subpart (a)(2) the meaning advanced by Cyprian — "taking advantage of a juvenile's lack of intellect or reasoning ability" — would render the word superfluous. This strained meaning would be subsumed within other methods proscribed by subpart (a)(2), such as "persuade, induce, or entice". To adopt

- 6 -

Cyprian's definition of "use" would be contrary *not* only to well-known rules of statutory construction, but to common sense as well.

In sum, there is *no* ambiguity. Accordingly, the rule of lenity, urged by Cyprian, does *not* apply. *See, e.g., **Muscarello v. United States,*** 524 U.S. 125, 118 S. Ct. 1911, 1919 (1998); ***United States v. Monjaras-Castaneda,*** 190 F.3d 326, 330 (5th Cir. 1999); ***Curry***, 902 F.2d at 915 (as discussed *infra*, construing § 861(a)(2) and finding *no* ambiguity concerning "using" a youth).

Here, the actor is Cyprian. As found by the jury, discussed *infra*, he "knowingly and intentionally" "used" his three-year-old child as a projectile to distract the Agents, and then fled. In short, he used his child "to assist in avoiding ... apprehension", as proscribed by § 861(a)(2).

Our interpretation of this subpart is consistent with that by the Eleventh Circuit in ***Curry***, noted *supra*. There, two co-conspirators were attempting to purchase cocaine. While en route, their automobile broke down; they called the under-eighteen nephew of one co-conspirator to bring his vehicle to them. The co-conspirators utilized the truck to transport the drugs, with the youth remaining in the vehicle as a passenger. In affirming the subpart (a)(2) conviction of one co-conspirator, the court held: "A reasonable inference for the jury to draw from this evidence is that [the co-conspirators] believed that using a vehicle would assist them in avoiding detection and arrest"; and "that the individual they chose for this task ... was" under 18 years of age. ***Id***. at 916.

The Eleventh Circuit held that this was sufficient for a subpart (a)(2) conviction for the proscribed "use" of a child. *Id*. Although the *Curry* court apparently was *not* presented with the definition of "use" issue advanced here by Cyprian for subpart (a)(2) purposes, we read *Curry* to be consistent with our rejection of the quite strained interpretation urged by Cyprian.

## B.

Cyprian contests the evidentiary sufficiency for his conspiracy and child-use convictions. Because he timely moved for judgment of acquittal on these counts, *see, e.g.*, *United States v. Pankhurst*, 118 F.3d 345, 351 (5th Cir.), *cert. denied*, ___ U.S. ___, 118 S. Ct. 630 (1997), we review such claims "in the light most favorable to the jury's verdict and affirm if a rational trier of fact could have found that the government proved all essential elements of a crime beyond a reasonable doubt". *United States v. Brito,* 136 F.3d 397, 408 (5th Cir.), *cert. denied*, ___ U.S. ___, 118 S. Ct. 1817 (1998). In so doing, all reasonable inferences are drawn in support of the verdict. *E.g.*, *United States v. Guerrero*, 169 F.3d 933, 939 (5th Cir. 1999). Likewise "[w]e must accept credibility choices that support the jury's verdict, and we may *not* reweigh the evidence". *Id*. (emphasis added).

## 1.

Concerning the charged child-use, Agent Sewell testified that Cyprian "threw the boy back over towards [the officers], which at the point when we tried to catch the kid, he took off running". Likewise, Agent Scott testified that Cyprian "lunged the child

- 8 -

toward us and took off running". Officer Caminita referred to Cyprian "throwing a baby to the ground head first"; James testified that Cyprian "threw him down".

This is sufficient, to say the least, for a rational juror to find, beyond a reasonable doubt, that Cyprian used the child in order to attempt to avoid apprehension for drug trafficking. For example, one reasonable inference by such a juror would be that Cyprian hoped the Agents would delay pursuing him in order to attend to the child.

2.

Regarding the conspiracy conviction, the evidence included recorded telephone conversations between James and Cyprian, and the testimony of James, a co-conspirator in the 20 February 1999 sale to Agent Honore. James provided a detailed account of the conspiracy, and identified Cyprian as its leader and the source of the crack cocaine that she sold on at least three occasions. This is sufficient for a rational juror to find, beyond a reasonable doubt, that Cyprian conspired to sell crack cocaine.

C.

Cyprian maintains that there was a prejudicial variance between the charged conspiracy and the conspiracy for which he was convicted. In order "to obtain a reversal based upon the alleged variance", Cyprian "must show the variance affected [his] substantial rights". *United States v. Thomas*, 12 F.3d 1350, 1358 (5th Cir.), *cert. denied,* 511 U.S. 1095 (1994). "The concerns underlying our cases on variance are to ensure that [, *inter alia*,]

the indictment notifies a defendant adequately to permit him to prepare his defense". ***United States v. Hernandez***, 962 F.2d 1152, 1159 (5th Cir. 1992).  In this regard, our court has "long held that when the indictment alleges the conspiracy count as a single conspiracy, but the government proves multiple conspiracies and a defendant's involvement in at least one of them, then clearly there is *no* variance affecting the defendant's substantial rights". ***United States v. Pena-Rodriguez,*** 110 F.3d 1120, 1128 (5th Cir.) (emphasis added) (*quoting* ***United States v. Faulkner****,* 17 F.3d 745, 762 (5th Cir.), *cert. denied,* 513 U.S. 870 (1994)), *cert. denied*, ___U.S.___, 118 S. Ct. 72 (1997).

As part of this claim, Cyprian asserts that a multiple conspiracy instruction should have been given.  But, in district court, he *neither* raised his variance claim *nor* requested the instruction.  *See, e.g.,* ***United States v. Sharpe***, No. 97-60263, 1999 WL 962025, at *12 (5th Cir. 20 Oct. 1999); ***United States v. Lokey***, 945 F.2d 825, 832-33 & n.n.1, 2 (5th Cir. 1991); Fᴇᴅ R. Cʀɪᴍ. P. 30 ("No party may assign as error any portion of the charge *or omission therefrom* unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." (emphasis added)).

Moreover, it is unclear from Cyprian's brief whether, for the first time on appeal, he is raising the claimed variance, or contesting the failure to give the instruction, or both.   No

authority need be cited for the rule that points on appeal are abandoned if *not* briefed adequately.

In the light of Cyprian's oral argument, however, it appears that his challenge concerns the failure to give the instruction. And, he conceded at oral argument that, because this issue is being raised belatedly, we review *only* for plain error. Under this quite narrow standard of review, if such failure was a "clear" or "obvious" error that affects "substantial rights", we have discretion to correct such forfeited error if it affects the fairness, integrity, or public reputation of judicial proceedings. *E.g.*, **United States v. Calverley**, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc), *cert.* *denied,* 513 U.S. 1196 (1995).

In urging plain error for such failure, Cyprian contends that, because the other two named conspirators were acquitted, there was no one with whom he could conspire. But, the indictment shows otherwise:

> Beginning at a time unknown, but continuing until on or about March 19, 1997, in the Eastern District of Louisiana and elsewhere, the defendants**, SCOTT CYPRIAN, KEVIN SILVAN,** and **PAT CARNEY,** did knowingly and intentionally combine, conspire, confederate and agree with each other *and with others known and unknown to the Grand Jury*, to possess with the intent to distribute a quantity of cocaine base ("crack")....

(Emphasis added.) As discussed *supra,* the indictment's *unnamed conspirator* is James, and the conspiracy includes the 20 February 1999 sale to Agent Honore.

The indictment charges one conspiracy involving Cyprian, the two named (and acquitted) co-conspirators, and an unnamed co-

conspirator, James.  The 20 February sale is within the charged time frame.  Therefore, there was *no* error, much less plain error, in *not* giving the now-urged multiple conspiracy instruction.

### III.

For the foregoing reasons, the judgment is

***AFFIRMED.***