# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 13, 2011

No. 10-30671

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

MICHAEL L. THOMPSON

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before JONES, Chief Judge, and BARKSDALE and GRAVES, Circuit Judges.

EDITH H. JONES, Chief Judge:

Appellant Michael Thompson was convicted of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951, and sentenced to 18 months imprisonment. He appeals this conviction, raising two issues: first, that the proof presented at trial constituted a constructive amendment of the government's indictment, in violation of the Fifth Amendment; and, second, that the evidence was insufficient to show that Thompson obtained property within the meaning of the Hobbs Act. Finding these arguments meritless, we AFFIRM.

No.  10-30671

## I.  Background

Appellant Michael Thompson ("Thompson") was the Executive Director of the Poverty Point Reservoir District ("PPRD"), a political subdivision of Louisiana whose purpose is to develop the natural resources of the district.  Joe Cleveland ("Cleveland") was an independent contractor who performed maintenance services for PPRD and was compensated on an hourly basis.  Cleveland's wife, Kathy Cleveland, worked as Thompson's administrative assistant, which involved processing her husband's time sheets and submitting them to PPRD for payment.  In response to accusations that Kathy Cleveland was embezzling PPRD funds, she and her husband entered into agreements with the government to testify against Thompson.  In particular, the Clevelands would testify that Thompson orchestrated a scheme in which Cleveland was paid nearly $8,000 for work performed for Thompson personally over the course of five years.  Using his position as Executive Director of PPRD, Thompson coerced Cleveland into performing a myriad of jobs at Thompson's home and farm, while paying Cleveland with PPRD funds.

The government obtained a single-count indictment against Thompson charging a violation of the Hobbs Act, 18 U.S.C. § 1951.  In the indictment, the government alleged, in pertinent part, that

> the Defendant, MICHAEL L. THOMPSON, did knowingly, willfully and unlawfully obstruct, delay, affect and attempt to obstruct, delay and affect commerce and the movement of articles and commodities in commerce by extortion . . . , in that Defendant MICHAEL L. THOMPSON unlawfully obtained property, that is, funds of the Poverty Point Reservoir District, not due him or his office with consent, said consent being induced and obtained under color of official right, all in violation of [18 U.S.C. §1951].

Through pretrial discovery and a bill of particulars produced by the government, Thompson eventually learned that the government's theory rested on

2

No. 10-30671

Thompson's payment of PPRD funds to a PPRD employee–later disclosed to be Cleveland–for work performed for Thompson personally.

On March 16, 2009, Thompson moved to dismiss the indictment,[1] arguing that the government failed to charge a Hobbs Act violation, since Cleveland was not deprived of property within the meaning of the Hobbs Act. Thompson contended that since Cleveland was compensated for his labor, he was not deprived of any property. The district court ultimately denied the motion, but *sua sponte* raised the issue of whether the government's presentation of evidence, as set forth in the bill of particulars and pleadings, would constitute a constructive amendment of the indictment. After hearing oral argument on the matter, the district court concluded that a constructive amendment would not result from the presentation of this theory to the jury and the case thus proceeded to trial. Thompson moved for judgment of acquittal at the close of the government's case and again at the close of the evidence. He also reurged his second motion to dismiss. The district court denied these motions.

On January 20, 2010, the jury returned a verdict of guilty. The district court subsequently sentenced Thompson to 18 months imprisonment and ordered him to pay $8,000 in restitution. Thompson now appeals. Finding his arguments to be without merit, we AFFIRM.

## II. Standards of Review

We review Thompson's claim of constructive amendment *de novo*. *United States v. McMillan*, 600 F.3d 434, 450 (5th Cir. 2010). In reviewing Thompson's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict and affirm if a rational trier of fact could have found that the government proved all essential elements of a crime beyond a reasonable doubt. *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999).

---

[1] This was the second of two motions to dismiss. The content of the first is not important for this appeal.

No.  10-30671

Credibility determinations and reasonable inferences are resolved in favor of the jury's verdict.  *Id.*

## III.  Discussion

Thompson raises two issues on appeal: (1) that his indictment was constructively amended in violation of the Fifth Amendment; and (2) that the government failed to present evidence that Thompson obtained property within the meaning of the Hobbs Act.  We address these issues in turn.

## A.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on . . . indictment of a Grand Jury."  U.S. CONST. amend. V.  The Supreme Court has held that this provision guarantees criminal defendants a right to be tried solely on allegations in an indictment returned by the grand jury.  *Stirone v. United States*, 361 U.S. 212, 217, 80 S. Ct. 270, 273 (1960); *see also United States v. Threadgill*, 172 F.3d 357, 370 (5th Cir. 1999).  Consequently, once an indictment issues, only the grand jury may broaden or alter it.  *See United States v. Broadnax*, 601 F.3d 336, 340 (5th Cir. 2010).  This rule is designed to safeguard a defendant's "right to be tried upon the charge in the indictment as found by the grand jury." *United States v. Adams*, 778 F.2d 1117, 1123 (5th Cir. 1985)(quoting *Gaither v. United States*, 413 F.2d 1061, 1071-72 (D.C. Cir. 1969)).

Not all variations between allegation and proof, however, rise to the level of a constructive amendment and thus violate this rule.  *See United States v. Millet*, 123 F.3d 268, 272 (5th Cir. 1997).  "A constructive amendment occurs when it permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that with which she was charged." *McMillan*, 600 F.3d at 451 (quotation marks and citation omitted).  Where this occurs, a finding of prejudice

4

is not necessary to establish a constitutional violation. *See United States v. Chambers*, 408 F.3d 237, 241 (5th Cir. 2005) (noting that constructive amendments of the indictment "are reversible *per se*") (quoting *United States v. Adams*, 778 F.2d at 1123)). If, however, the variance between allegations in the indictment and proof at trial does not rise to the level of constructive amendment, our review is for harmless error. *See United States v. Nunez*, 180 F.3d 227, 231 (5th Cir. 1999).

In this case, Thompson's counsel conceded at oral argument that if a mere variance occurred, our inquiry is complete, since the defense suffered no prejudice as a result. Thus, we need only determine on what side of the constructive amendment divide this case falls.

The government's single-count indictment charged Thompson with violating the Hobbs Act. In order to establish such a violation, the government was required to allege and prove that Thompson "obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce" by means of "extortion." 18 U.S.C. § 1951. The Supreme Court has clarified that there are two "essential elements" to this provision: (1) interference with commerce, and (2) extortion. *See Stirone*, 361 U.S. at 218, 80 S. Ct. at 274; *United States v. Robinson*, 119 F.3d 1205, 1212 (5th Cir. 1997). Since the "interference with commerce" element is not at issue on appeal, the remaining question is whether the government's proof at trial modified the "essential element" of extortion alleged in the indictment, such that a constructive amended resulted.

The Hobbs Act defines "extortion" as "the obtaining of property from another, with his consent, induced . . . under color of official right." 18 U.S.C. § 1951(b)(2). The indictment is quoted in pertinent part above. Thompson argues that the indictment identifies PPRD as the entity deprived of its property and the entity whose consent was induced or obtained under color of official

No. 10-30671

right.   Thompson asserts that, at trial, no such theory of extortion was presented.   Rather, the theory presented was that it was *Cleveland*–not PPRD–who was deprived of property by consent and thus extorted within the meaning of the statute.

While Thompson correctly identifies the government's trial theory, we disagree it is necessarily inconsistent with theory of the case as set forth in the indictment.  Admittedly, the indictment is ambiguous and thus may be subject to competing interpretations.  But to the extent the drafting of the indictment was unclear–as to whose consent was obtained and the *modus operandi* of the extortion–the government resolved any ambiguities during pretrial discovery and through clarifications in its bill of particulars.  As a result, by the time trial began, the government's theory was crystalized.

Thompson asserts that the indictment alleges that PPRD was the party extorted, since the only party deprived of property in the indictment was PPRD. The parties agree that this allegation alone would not support a claim of extortion.  The government explains that it was nonetheless an essential part of its Hobbs Act claim, since interference with PPRD funds was the jurisdictional hook necessary to satisfy the interstate element of the statute. *See Stirone*, 361 U.S. at 218, 80 S. Ct. at 274.  To satisfy the element of extortion, however, the government admits it needed to prove an additional deprivation of property that would qualify as extortion.

At trial, the government adduced evidence that Thompson obtained Cleveland's services, with Cleveland's consent, under color of official right.  As discussed below, this evidence suffices to prove extortion under the Hobbs Act. The only question is whether this evidence constructively amended the indictment.  We hold that it does not.

As discussed by the parties, there were two deprivations of property occasioned by Thompson's scheme: use of PPRD funds and appropriation of

6

Cleveland's labor. While these two deprivations satisfied different elements under the Hobbs Act, both were undoubtedly part of a single extortionate scheme. And the relationship between them is clear: while the indictment alleged that PPRD was deprived of property, the evidence relating to Cleveland explained the *modus operandi* by which this was achieved. Both parties were ultimately victims of the same scheme.

Of course, the indictment in this case was not a model of clarity on this point. Nevertheless, taking together the allegations in the indictment, the subsequent clarifications in the bill of particulars, and the evidence adduced at trial, we are satisfied that the government has pursued a single, consistent theory throughout this prosecution. The allegations regarding Cleveland did not amend or alter the indictment, but rather "explained the allegations of the indictment." *United States v. Lisinksi*, 728 F.2d 887, 893 (7th Cir. 1984). We are thus convinced that the jury was not permitted to convict Thompson "upon a factual basis that effectively modifie[d] an essential element of the offense charged" or "on a materially different theory or set of facts than that with which [he] was charged." *United States v. Reasor*, 418 F.3d 466, 475 (5th Cir. 2005).

The seminal Supreme Court decision on constructive amendment does not compel a different outcome. *See Stirone*, 361 U.S. 212, 80 S. Ct. 270. In *Stirone*, the indictment charged defendant with unlawfully interfering with interstate commerce in violation of the Hobbs Act. *Id.* at 213-14, 80 S. Ct. at 271. In particular, defendant had used his position in a labor union to threaten interference with the victim's contract to supply ready-mixed concrete for the erection of a steel-processing plant. *Id.* The government charged that defendant's conduct interfered with the interstate shipment of sand, which was brought in from other states to be used in making the concrete. *Id.* At trial, however, the government presented evidence that defendant interfered with interstate commerce not only in sand, but also in prospective steel shipments

No. 10-30671

from the steel plant under construction. *Id.* The Court held that the government's presentation of this theory–along with instructions permitting the jury to convict based on it–effected a constructive amendment of the indictment. *Id.* at 215, 80 S. Ct. at 272. The Court reasoned that the evidence regarding interference with prospective steel shipments was an independent basis on which the government urged the jury to convict, but which was not charged in the indictment. *Id.* at 218-19, 80 S. Ct. at 274. The government had alleged interference with sand in order to satisfy the interstate commerce element of a Hobbs Act violation. To allow conviction based on interference with an entirely separate aspect of interstate commerce would therefore violate the Fifth Amendment. Accordingly, defendant's conviction was reversed. *Id.* at 219, 80 S. Ct. at 274.

In this case, the government did not maintain two alternative theories–only one of which was charged–and urge the jury to convict upon either of them. Rather, the government presented a single, consistent theory of conviction throughout: from his position as Executive Director of PPRD, Thompson obtained Cleveland's labor with his consent and under color of right, while authorizing payment of PPRD funds to Cleveland in exchange. While Cleveland's labor is the only property relevant to the element of extortion, Thompson's appropriation of both forms of property was part of a single scheme. Accordingly, there is no fatal variance between the indictment and the proof presented at trial.

## B.

Thompson argues alternatively that the government failed to prove that Cleveland was deprived of property within the meaning of the Hobbs Act. As noted above, the Hobbs Act defines "extortion" to require the "obtaining of property from another . . . ." 18 U.S.C. § 1951(b)(2). Since "[t]he concept of property under the Hobbs Act has not been limited to physical or tangible

8

things," *United States v. Stephens*, 964 F.2d 424, 433 n.20 (5th Cir. 1992); *United States v. Nadaline*, 471 F.2d 340, 344 (5th Cir. 1972), the labor provided by Cleveland qualifies as "property" within the meaning of the Hobbs Act. *See United States v. Delano*, 55 F.3d 720, 731 (2d Cir. 1995) (noting that public official had received "payment" in the form of tree removal services). Nevertheless, Thompson argues that Cleveland was not "deprived" of property, since he was compensated for the labor he performed. In other words, Cleveland's compensation precludes a finding that he was deprived of property.

Thompson acknowledges that a number of Hobbs Act cases establish a common pattern in which the victim of extortion is deprived of property, but obtains some sort of benefit in exchange. *See, e.g.*, *id.* (tree removal company removed trees with the understanding that the official would assign jobs "which the company ordinarily would not have received"); *Stephens*, 964 F.2d at 431 (extorted victim paid defendant based on her belief that defendant could "take care" of the legal charges against her). Thompson asserts, however, that the benefit in such cases is "incidental" and thus different in kind from this case, where Cleveland billed PPRD for the work he performed and was "paid in full." Thompson appears to concede that the existence of a *quid pro quo* arrangement does not, by itself, preclude a finding of extortion. Rather, he contends that the present case is "fundamentally different" since the exchange here involved full compensation for Cleveland's labor. This proffered distinction–between "incidental" benefits and "full" compensation–is not contemplated by the text of the statute and lacks support in reason. Hobbs Act liability should not turn on the value of the deal obtained by extorted victims.

A plain reading of the Hobbs Act suggests that extortion is complete once property is obtained by the defendant. *See* 18 U.S.C. § 1951(b)(2). As the Supreme Court has stated, extortion "is completed at the time when the public official receives a payment in return for his agreement to perform specific official

acts." *Evans v. United States*, 504 U.S. 255, 268, 112 S. Ct. 1881, 1889 (1992). Whether or not the *quid pro quo* is ultimately fulfilled is not relevant to a finding of extortion. *Cf. id.* ("[F]ulfillment of the *quid pro quo* is not an element of the offense."). The fact that Cleveland was subsequently paid for his labor does not preclude a finding that Thompson deprived Cleveland of property. *See United States v. French*, 628 F.2d 1069, 1074 (8th Cir. 1980) (noting that extortionate conduct is "no less extortion because the 'victim' may in some sense receive an economic benefit . . . ."); *Delano*, 55 F.3d at 731.

Equally unavailing is Thompson's reliance on *Scheidler v. National Organization For Women, Inc.,* 537 U.S. 393, 404, 123 S. Ct. 1057, 1065 (2003). In *Scheidler*, the Court held that defendants had not committed extortion under the Hobbs Act by interfering with women's access to abortion clinics, since defendants had not "obtained" any property in so doing. *Id.* at 404-05, 123 S. Ct. at 1065-66. The Court acknowledged that while defendants "may have deprived or sought to deprive [abortion clinics] of their alleged property right of exclusive control of their business assets," the defendants had not *acquired* any such property. *Id.* at 405, 123 S. Ct. at 1066.

While it is true that interference with a property or liberty interest is not sufficient to create Hobbs Act liability, *Scheidler* fails to support Thompson's argument. *Scheidler* clarified that the "obtaining" requirement of extortion under the Hobbs Act "require[s] not only the deprivation but also the acquisition of property." *Id.* at 404, 123 S. Ct. at 1065. This explains why the protesters' interference with abortion clinics and their patients was not sufficient to create Hobbs Act liability, particularly because they did not "acquire" any property in so doing. The present case, however, is distinguishable, since Thompson clearly acquired property through his scheme. Cleveland performed a host of tasks at Thompson's home and farm, which inured to Thompson's personal benefit. Thus, Thompson did not merely interfere with Cleveland's liberty interests, but

No. 10-30671

actually obtained the direct benefits of his labor. *Scheidler* thus provides no support for Thompson's argument. *See United States v. Gotti*, 459 F.3d 296, 300 (2d Cir. 2006) (noting that *Scheidler*–"far from holding that a Hobbs Act extortion could not be premised on the extortion of intangible property rights–simply clarified that for Hobbs Act liability to attach, there must be a showing that the defendant did not merely seek to deprive the victim of the property right in question, but also sought to obtain that right for himself").

Consequently, we hold that the compensation paid to Cleveland for his labor does not preclude a finding that Thompson "obtained" property within the meaning of the Hobbs Act. The evidence was sufficient to support the jury's verdict.

## IV. Conclusion

For these reasons, Thompson's conviction is **AFFIRMED**.