# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

No. 14-20026

UNITED STATES OF AMERICA,

　　　Plaintiff - Appellee

v.

DARREN DAVID CHAKER, also known as Darren Del Nero, also known as Darrin Shackler,

　　　Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**
April 14, 2016

Lyle W. Cayce
Clerk

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before STEWART, Chief Judge, OWEN and COSTA, Circuit Judges.

CARL E. STEWART, Chief Judge:

In an attempt to shield a residential property from foreclosure, Defendant-Appellant Darren Chaker ("Chaker") transferred his assets through two entities and caused three bankruptcies to be filed. At a hearing in connection with his second bankruptcy, Chaker failed to disclose certain rental income from the property. After a six-day bench trial, the district court convicted him on one count of bankruptcy fraud in violation of 18 U.S.C. § 157(3). He now appeals that conviction, raising several constructive amendment arguments and a literal truth defense. Finding no error, we AFFIRM.

No. 14-20026

## BACKGROUND

Altogether, this case involves two business entities, three bankruptcies, and several residential properties owned by Chaker.  Reduced to its essentials, however, Chaker's prosecution turns on a fraudulent misrepresentation that he made to a bankruptcy court in March 2007.  We discuss the relevant facts from Chaker's trial "in the light most favorable to the government and defer to all reasonable inferences drawn by the trial court." *United States v. Tovar*, 719 F.3d 376, 388 (5th Cir. 2013) (quotation marks and citation omitted).

### A. Factual Background

The story starts in 2004, when Chaker purchased the property at issue—a home at 11307 Pampass Pass on the outskirts of Houston—and represented on his loan application that it would be his primary residence.  One year later, and with the help of a Nevada lawyer specializing in business and trust formation, Chaker began creating entities and shuffling the Pampass Pass property through those entities.  Chaker first formed Platinum Holdings Group Trust ("Platinum Holdings") and made himself the primary beneficiary and primary trustee, holding exclusive access to and control of Platinum Holding's income and assets.  As trustee of Platinum Holdings, Chaker promptly created Core Capital, LLC ("Core Capital").  Platinum Holdings was given all voting rights in Core Capital and was entitled to all of Core Capital's profits.  Chaker transferred all of his assets, including the Pampass Pass property, to Platinum Holdings, and then, as trustee of Platinum Holdings, transferred them to Core Capital.  Chaker also executed a general warranty deed for the Pampass Pass property, conveying it to Core Capital, in September 2005.  That deed was never recorded.

Beginning in September 2005, Chaker rented the Pampass Pass property to a series of short-term tenants, at times transacting in his own name and at other times transacting in the name of Core Capital.  Chaker's first

2

No. 14-20026

tenant lease ran from September 2005 to January 2006, and when it ended, Core Capital sued that tenant in state court for $70,000 in alleged damage to the property. A second tenant leased the property from January to February 2006. Finally, a third tenant lease ran from January to June 2007.

Meanwhile, Chaker failed to keep up his mortgage obligations on the Pampass Pass property. When the tax bill for the Pampass Pass property came due in January 2005, Chaker did not pay it. Instead, he obtained a loan from a company called Tax Ease, which paid the taxes for Chaker and placed a lien on the property. Chaker did not inform Saxon Mortgage, the mortgage servicing company responsible for the Pampass Pass property, of the 2004 tax delinquency or the Tax Ease lien.

Chaker also failed to pay his 2005 taxes when they came due in January 2006 and stopped making mortgage payments that April. Saxon Mortgage paid the delinquent 2005 taxes. Saxon Mortgage also paid off the Tax Ease lien stemming from Chaker's delinquent 2004 taxes in order to preserve its superior security interest in the Pampass Pass property. Because Chaker was in monetary default, *i.e.*, delinquent on his mortgage payment, and non-monetary default, *i.e.*, encumbering the Pampass Pass property with the superior Tax Ease lien, Saxon Mortgage initiated foreclosure proceedings on the Pampass Pass property. Saxon Mortgage set a foreclosure date of December 5, 2006.

## B. Bankruptcy Proceedings

Chaker caused three bankruptcies to be filed, all following the same strategy—on the same day Saxon Mortgage was set to foreclose on the Pampass Pass property, Chaker filed a bankruptcy petition and used the bankruptcy court's automatic stay to put the foreclosure on ice. Thus, in connection with Saxon's first foreclosure date, Chaker filed a Chapter 13 bankruptcy petition on December 5, 2006. Chaker attached Statements of

3

No. 14-20026

Financial Affairs (hereinafter, "Statements") and Schedules to that filing, electronically signing under penalty of perjury that he had reviewed the Statements and Schedules and that they were true and accurate to the best of his knowledge.  In those Statements and Schedules, Chaker claimed the Pampass Pass property as his homestead, and represented, *inter alia*, that he had no interest in any business entities; that he had no unexpired leases; and that, within the previous ten years, he had not transferred any property to a self-settled trust of which he was a beneficiary.  Chaker did not disclose his relationship with Platinum Holdings and Core Capital in his Statements or Schedules.

Chaker's first bankruptcy invoked an automatic stay, and Saxon Mortgage could not foreclose on the Pampass Pass property until the stay was lifted.  Ultimately, the stay was lifted in February 2007, when the bankruptcy court dismissed Chaker's first bankruptcy.

Saxon Mortgage set a new foreclosure date of March 6, 2007.  The same day, Chaker filed a second Chapter 13 bankruptcy petition, attaching Statements and Schedules under penalty of perjury that were nearly identical to those from his first bankruptcy.  Chaker's filing once more invoked an automatic stay on Saxon Mortgage's foreclosure.  Because this was his second debtor filing, however, the automatic stay would last only 30 days unless Chaker could extend it by showing that his second filing was not made in bad faith.  Chaker moved to extend the stay, and the bankruptcy court held a hearing on March 26, 2007.  At that hearing, Chaker testified, *inter alia*, that he currently had a tenant in the Pampass Pass home.  Critically, the following exchange occurred:

[Attorney:] Okay.  Do you have an actual lease?

[Chaker:] Yes.

. . .

4

No. 14-20026

[Attorney:] How long has the property been rented?

[Chaker:] Since the first week of January; just after I filed bankruptcy.

. . .

[Attorney:] Had you ever rented the property out prior to January?

[Chaker:] No.

The bankruptcy court ultimately declined to extend the stay. The court later dismissed Chaker's second bankruptcy in July 2007.

Saxon Mortgage set a third foreclosure date of August 7, 2007, and Chaker again filed for bankruptcy on the day of the scheduled foreclosure. This time, however, Chaker filed a Chapter 11 petition with Core Capital as the debtor. Because Core Capital was a new debtor, this resulted in a fresh stay that was not subject to the 30-day limitation; however, Saxon Mortgage elected to foreclose as scheduled and to move to retroactively annul the stay. The bankruptcy court ultimately granted Saxon Mortgage's motion and dismissed Core Capital's bankruptcy petition. At a status conference, the court informed Chaker that it planned to make a criminal referral to the United States Attorney's Office.

### C. Criminal Prosecution

In July 2012, a federal grand jury returned a two-count superseding indictment against Chaker. Count One, on which Chaker was convicted, alleged bankruptcy fraud in violation of 18 U.S.C. § 157(3).[1] Specifically, Count One alleged that beginning in approximately March 2007, Chaker "devised and intended to devise a scheme and artifice to defraud his creditors, the U.S. Bankruptcy Court, the Bankruptcy Trustee, and the United States Trustee." Count One further alleged that Chaker executed this scheme at a

---

[1] Count Two alleged that Chaker made a false declaration under penalty of perjury in his August 2007 bankruptcy proceeding, in violation of 18 U.S.C. § 152(3). The district court found Chaker not guilty of the false declaration offense, and it is not directly at issue here.

No. 14-20026

March 26, 2007, bankruptcy hearing when he "falsely and fraudulently represented to the Court that the home Pampass Pass was never leased out prior to January 2007, when he then well knew in truth and in fact that he had" previously leased the property several times.

Chaker waived his right to a jury trial, and the district court held a six-day bench trial. At the close of the Government's case-in-chief, Chaker moved for a judgment of acquittal, making, *inter alia*, a constructive amendment argument. He orally renewed the same motion at the close of his defense, at which time the court denied it without prejudice.

After taking the matter under advisement, the court delivered its verdict from the bench and announced factual findings. Finding Chaker guilty on the bankruptcy fraud offense, the court made the following "summary findings":

(1) On March 26, 2007, defendant had an equitable or beneficial interest in the Pampass Pass property which he purchased in 2004;

(2) Defendant knew he had some interest, even if he could not define it legally, in the property;

(3) Defendant engaged in a scheme to defraud the Bankruptcy Court and his creditor, Saxon, the entity representing the holder of the Pampass Pass property mortgage;

(4) Defendant intentionally testified falsely while under oath in denying that the property had been 'rented out' prior to his personal bankruptcies when asked about the matter by Saxon's attorney on March 26, 2007 in his second bankruptcy, . . .

(5) The testimony was material to the strategy of Saxon and the need for both Saxon and the Bankruptcy Court to have truthful testimony in order to assess whether the defendant was in good faith in filing the second bankruptcy and whether Defendant's Proposed Plan of Reorganization was feasible.

After acquitting Chaker on a separate offense, the court also made a number of "specific findings" regarding Chaker's creation of Platinum Holdings and

6

No. 14-20026

Core Capital and his subsequent transfer of his assets into those entities, stating that these acts were "all part of the scheme."

Chaker filed a post-trial motion for acquittal or new trial, arguing, *inter alia*, that the court had constructively amended the indictment by basing his guilt on a scheme to defraud that was different from and broader than the scheme alleged in the indictment. The court denied the motion and later sentenced Chaker to fifteen months' imprisonment. Chaker timely appealed.

## DISCUSSION

On appeal, Chaker challenges his bankruptcy fraud conviction, arguing that the district court constructively amended the indictment in a number of ways. He also argues that the district court erred in convicting him based on a false or fraudulent statement that was literally true. We address each issue in turn.

### A.

Chaker's first three arguments each raise constructive amendment concerns. Accordingly, we begin with general principles of law that guide our analysis on all three arguments. The Fifth Amendment "guarantees criminal defendants a right to be tried solely on allegations in an indictment returned by the grand jury." *United States v. Thompson*, 647 F.3d 180, 183–84 (5th Cir. 2011) (citing *Stirone v. United States*, 361 U.S. 212, 217 (1960)). From this guarantee arises the doctrine of constructive amendment, which provides that "[a]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *United States v. Griffin*, 800 F.3d 198, 202 (5th Cir. 2015) (quoting *Stirone*, 361 U.S. at 215–16), *cert. denied*, No. 15-7579, 2016 WL 763615 (U.S. Feb. 29, 2016). In this circuit, a constructive amendment occurs when the court "permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged" or upon "a materially different theory or set of facts than

that which [the defendant] was charged." *United States v. McMillan*, 600 F.3d 434, 451 (5th Cir. 2010) (quoting *United States v. Hoover*, 467 F.3d 496, 500–01 (5th Cir. 2006)).

### 1.

Chaker preserved his first constructive amendment argument by timely raising it below. We review preserved constructive amendment claims *de novo*. *United States v. Jara-Favela*, 686 F.3d 289, 299 (5th Cir. 2012).

Consistent with his motion for acquittal below, Chaker first argues that the district court, in its verdict, constructively amended the indictment by convicting him based on one scheme to defraud—a plan that originated in 2005 when he created Platinum Holdings and Core Capital and began funneling his assets through those entities—when the grand jury's indictment alleged a different and narrower scheme—a plan that originated when Chaker filed his second bankruptcy in March 2007 and was executed when Chaker made a false and fraudulent statement at a hearing in connection with that second bankruptcy. We disagree.

Generally summarizing the elements of the offense, bankruptcy fraud requires a showing that Chaker devised a scheme or artifice to defraud and that, for the purpose of executing that scheme, he made a false or fraudulent representation during a bankruptcy proceeding. *See* 18 U.S.C. § 157(3). As mentioned *supra*, the indictment alleged a particular scheme to defraud and a particular false or fraudulent representation: in approximately March 2007, Chaker hatched a plan to stay a foreclosure on the Pampass Pass property by filing a bankruptcy with false Statements and Schedules, and, on March 26, 2007, he executed that plan by falsely and fraudulently representing to a bankruptcy court that the Pampass Pass property had not been leased out before January 2007. In its verdict, the district court made factual findings attendant to the alleged scheme and the alleged false or fraudulent

No. 14-20026

representation, finding that Chaker knew he had some equitable or beneficial interest in the Pampass Pass property; that he engaged in a scheme to defraud, *inter alia*, Saxon Mortgage, the entity servicing his loan on the Pampass Pass property; and that he executed this scheme on March 26, 2007, by intentionally failing to disclose to Saxon Mortgage and the bankruptcy court that he had rented out the Pampass Pass property prior to January 2007.  In light of these findings directly addressing the 2007 scheme charged in the indictment, we are convinced that the district court did not convict Chaker "upon a factual basis that effectively modifie[d] an essential element of the offense charged" or "on a materially different theory or set of facts than that with which [he] was charged."  *Thompson*, 647 F.3d at 185 (alterations in original) (quotation marks and citation omitted).  Thus, there was no constructive amendment.  *See id.*

Chaker argues that, notwithstanding these findings relating to the 2007 scheme charged in the indictment, the district court's "specific findings" still resulted in a constructive amendment.  Specifically, he points to the court's reference to pre-2007 acts—Chaker's creation of Platinum Holdings and Core Capital and his subsequent transfer of his assets through those entities—"as all part of the scheme" and argues that he was convicted of a scheme broader than that charged in the indictment.  Read in context with the rest of the district court's verdict and the parties' trial theories, we are not persuaded that the court's specific findings resulted in a constructive amendment.

Important here, the district court pressed the Government to pursue a single trial theory from beginning to end, *i.e.*, that Chaker's conviction turned on whether he testified falsely or fraudulently at the March 2007 hearing in connection with his second bankruptcy and that any ancillary evidence related to Platinum Holdings, Core Capital, and Chaker's property transfers was

9

relevant only to show his intent or state of mind at the March 2007 hearing.[2] *See Thompson*, 647 F.3d at 186 (rejecting a constructive amendment argument where, among other things, "the government presented a single, consistent theory of conviction throughout" trial).  Also important, Chaker pursued a single theory in defense of the Government's case, *i.e.*, that he disclosed his rental history and his interests in Platinum Holdings and Core Capital to his attorneys, who were then supposed to include that information in his bankruptcy Statements and Schedules, such that he had no motive or intent to hide Pampass Pass' rental history from Saxon Mortgage or the bankruptcy court at the March 2007 hearing.[3]

The gap between the Government's theory and Chaker's defense presented a difficult question for the district court to resolve: did Chaker intentionally testify falsely or fraudulently at the March 2007 hearing as part of a scheme to defraud or was his testimony merely an innocent misrepresentation?[4]  The district court answered this question in its "specific findings" and explained why Chaker's March 2007 testimony was

---

[2] At several points during the trial, the district court clarified its understanding of the Government's theory as relying on evidence of Platinum Holdings, Core Capital, and Chaker's property transfers to show that Chaker intended to lie to the bankruptcy judge and Saxon Mortgage, not to show a scheme to defraud different from that charged in the indictment.  These curative exchanges between the court and the Government protected against a constructive amendment of the indictment. *Cf. United States v. Gates*, 624 F. App'x 893, 897 (5th Cir. 2015) (per curiam) (noting, in the jury trial context, the importance of "curative measures" to protect against a constructive amendment of the indictment).

[3] As Chaker's counsel stated during opening argument, "Mr. Chaker had filled out papers for [his attorney], and then relied on [his attorney] to get it right. . . .  Mr. Chaker made mistakes in his testimony, but there was no intent to defraud.  And I'm probably going to talk about a lot of other mistakes that he made, so that the Court can see that this particular error that the Government is fixating on is not a sign of malice; it's a sign of incompetence.  Mr. Chaker had no reason to know what the effect of this particular question, and this particular answer was."

[4] During the Government's closing argument, the district court recognized this difficulty, stating, "But I have to find that Mr. Chaker intended to lie in connection with the answer by Sheppard on this question of prior rentals.  And it's a difficult question, okay?"

demonstrably false and fraudulent and why he knew this to be so.  The court's reference to Platinum Holdings, Core Capital, and Chaker's property transfers in providing this explanation did not cause a constructive amendment of the indictment; rather, the court merely rejected Chaker's defense with reference to evidence that was probative of his intent and the charged scheme and that was necessary to complete the story.  *See United States v. Gates*, 624 F. App'x 893, 896–97 (5th Cir. 2015) (rejecting a constructive amendment argument where the Government's evidence of a fraudulent misrepresentation different from that charged in the indictment was "probative of the [defendants'] scheme"); *McMillan*, 600 F.3d at 451 (similar); *see also Thompson*, 647 F.3d at 185 (rejecting a constructive amendment argument where the Government's evidence of an uncharged Hobbs act violation "did not amend or alter the indictment, but rather 'explained the allegations of the indictment'" (quoting *United States v. Lisinki*, 728 F.2d 887, 893 (7th Cir. 1984)).

Chaker argues that the superseding indictment gave no notice that Platinum Holdings and Core Capital would be relevant at trial.  *See Hoover*, 467 F.3d at 502 (reversing and remanding based on a constructive amendment of the indictment, where, *inter alia*, the defendant "may have reasonably relied on the indictment and only prepared a [limited] defense").  The record belies this argument.  The indictment itself discussed much of this evidence in its eleven-paragraph "Introduction."   Moreover, in a pre-trial filing, the Government notified Chaker that it intended to introduce evidence related to Platinum Holdings and Core Capital as intrinsic to the charged scheme and as relevant to his state of mind under Federal Rule of Evidence 404(b).  Chaker cannot now claim surprise as relevant to his constructive amendment argument, particularly when Chaker, not the Government, called the Nevada lawyer who had created Platinum Holdings and Core Capital to the witness

11

stand and solicited detailed testimony about Chaker's creation of those entities.

Nor does *Stirone*, the seminal constructive amendment case on which Chaker relies, change the result here.  In *Stirone,* the indictment charged the defendant with a Hobbs Act violation based on unlawful interference with interstate shipments of sand.  *See* 361 U.S. at 213–14.  At trial, however, the Government broadened its theory and presented evidence that the defendant not only disrupted interstate sand shipments, but also interfered with interstate shipments of steel.  *Id.* at 214.  Adding to the problem, the trial court instructed the jury that the defendant was guilty if he interfered with either sand or steel that moved in interstate commerce.  *See id.*  The Supreme Court "held that the government's presentation of [the steel] theory—along with instructions permitting the jury to convict based on it—effected a constructive amendment of the indictment." *Thompson*, 647 F.3d at 185–86 (citing *Stirone*, 361 U.S. at 215).  The Court further voiced its concern that "it cannot be said with certainty that with a new basis for conviction added, [the defendant] was convicted solely on the charge made in the indictment the grand jury returned." *Stirone*, 361 U.S. at 217.

*Stirone* is distinguishable on its facts and circumstances.  As discussed *supra*, the Government did not maintain two different theories at trial—from start to finish, the Government maintained that Chaker's guilt was predicated on the scheme concerning his 2007 bankruptcy proceedings and that evidence related to Platinum Holdings and Core Capital was relevant only to show his intent.  *See Thompson*, 647 F.3d at 186.  Moreover, because this was a bench trial with a lengthy transcript of the district court's verdict, we are not left to guess as to which theory a jury relied upon to convict Chaker as was the case in *Stirone. See* 361 U.S. at 217.  Our review of the verdict and the allegations in the indictment indicates that the court convicted Chaker based on the 2007

No. 14-20026

scheme charged in the indictment and only considered evidence related to Platinum Holdings and Core Capital to explain Chaker's intent and motive at the March 2007 hearing.

For these reasons, we are convinced that Chaker was convicted based on the 2007 scheme to defraud alleged in the indictment and not a different or broader scheme. Accordingly, we reject Chaker's first constructive amendment argument.

**2.**

Chaker's next constructive amendment argument is raised for the first time on appeal, and thus our review is for plain error. *See United States v. Stanford*, 805 F.3d 557, 566 (5th Cir. 2015) (noting that plain error requires a showing of clear or obvious error that affects substantial rights and "seriously affects the fairness integrity, public reputation of judicial proceedings" (quotation marks, alteration, and citation omitted)). He argues that the district court constructively amended the indictment by incorrectly formulating the elements of his bankruptcy fraud conviction. Specifically, he contends that the court convicted him of bankruptcy fraud based on five elements from *United States v. Spurlin*, 664 F.3d 954 (5th Cir. 2011), that applied to his false declaration offense but not to his bankruptcy fraud offense.[5] Because Chaker's argument misstates the district court's verdict, we disagree.

Recall that Count One of the indictment charged bankruptcy fraud in violation of 18 U.S.C. § 157(3) and that Count Two of the indictment charged

---

[5] Chaker also argues that the district court erred in convicting him of bankruptcy fraud without requiring a "specific intent" element. Assuming such a finding is required, Chaker does not explain which aspect of "specific intent" he thinks was lacking in the district court's verdict—the district court made ample findings that Chaker "intentionally testified falsely under oath," and that he did so after filing a "bankruptcy . . . to prevent the foreclosure" of his Pampass Pass property so that he could shield his rental and tenant-lawsuit income from his creditor, Saxon Mortgage.

13

making a false declaration under penalty of perjury in violation of 18 U.S.C. § 152(3). To begin its verdict, the district court recited the elements of the bankruptcy fraud offense by reading the text of § 157(3); without transitioning, the court then cited *Spurlin* for the elements of the false declaration offense. The court's subsequent discussion of the bankruptcy fraud offense—in both its "summary findings" and its more detailed "specific findings"—dispels any notion that the court erroneously applied *Spurlin*'s five elements to the bankruptcy fraud offense. In both places, the court articulated findings that do correspond to Chaker's bankruptcy fraud conviction, but do not correspond to his acquittal on the false declaration offense or the *Spurlin* elements, namely that Chaker engaged in a scheme or artifice to defraud the bankruptcy court and his creditor, Saxon Mortgage. We see no plain error.

**3.**

Chaker's final constructive amendment argument is also raised for the first time on appeal such that our review is for plain error.[6] *See Stanford*, 805 F.3d 557. He argues that the district court's verdict impermissibly reformulated the misrepresentation alleged by the grand jury, to wit, that Chaker "falsely and fraudulently represented to the Court that the home Pampass Pass was never leased out prior to January 2007." Again, we disagree.

Chaker's appellate brief selectively quotes the indictment, and so we begin by reproducing the pertinent paragraph:

> [D]efendant herein, did devise a scheme and artifice to defraud and for the purpose of executing and concealing the scheme and artifice, and attempting to do so, made false and fraudulent representations . . ., specifically his testimony during a bankruptcy

---

[6] Although Chaker moved before trial to dismiss the indictment based on an alleged discrepancy between the charged misrepresentation and his actual March 2007 testimony, that motion did not challenge (and, at that point, could not have challenged) any discrepancy between the indictment and the verdict.

> hearing in which, while under oath, the defendant falsely and fraudulently represented to the Court that the home Pampass Pass was never leased out prior to January 2007, when he then well knew in truth and in fact, that he had previously contracted with [a realtor,] who secured at least two rental contracts . . . .

The district court made factual findings directly speaking to each allegation in this paragraph. The court found that Chaker "intentionally testified falsely while under oath in denying that the property had been 'rented out' prior to his personal bankruptcies" and that the specific false or fraudulent misrepresentation was Chaker's answer of "No" to the question, "Had you ever rented the property out prior to January," at the March 2007 hearing. The court further found:

> [Chaker's] statement denying that he previously had rented out the property was false because he did rent out the property. Mr. Chaker treated the house as his own to use or to rent. He hired and dealt with the realtor. There are almost 200 pages of documents signed by defendant personally demonstrating his personal involvement in the leasing in 2005 and '6 both before and after the creation of the LLC, Core Capital.

Based on these findings, it is clear that the court found the specific misrepresentation alleged in the indictment and further found that misrepresentation to be false or fraudulent for the specific reason alleged in the indictment. *See Hoover*, 467 F.3d at 502 ("In accordance with the Supreme Court's decision in *Stirone v. United States*, when the government chooses to specifically charge the manner in which the defendant's statement is false, the government should be required to prove that it is untruthful for that reason." (footnote omitted)). Thus, the district court's formulation of the indictment's misrepresentation did not constructively amend the indictment, and there is no plain error.

No. 14-20026

## B.

Constructive amendment arguments aside, Chaker argues that the district court erred in convicting him of bankruptcy fraud based on a statement that was "literally true." As he did in his motion for acquittal, Chaker argues that Core Capital held legal title to the Pampass Pass property and thus his March 2007 testimony that "he" had never leased the property prior to January 2007 was literally true. This argument fails for multiple reasons, not the least of which being that Chaker's prosecution and conviction was for bankruptcy fraud, not perjury. *See, e.g.*, *United States v. Abrams*, 568 F.2d 411, 422 (5th Cir. 1978) (citing *Bronston v. United States*, 409 U.S. 352 (1973), and noting that the "federal perjury statute is not violated when a witness gives an evasive, nonresponsive but literally true answer, even if the answer is intentionally misleading and arguably false by negative implication" (internal citation omitted)).

In any event, Chaker thoroughly pressed his legal title argument to the district court, and the court rejected it with detailed factual findings. Thus, his argument remains nothing more than a challenge to the sufficiency of the evidence as to the court's findings. "When a defendant challenges a bench-trial conviction on sufficiency-of-the-evidence grounds, we focus on whether the finding of guilt is supported by substantial evidence, *i.e.*, evidence sufficient to justify the trial judge, as the trier of fact, in concluding beyond a reasonable doubt that the defendant is guilty.'" *Tovar*, 719 F.3d at 388 (citations and internal quotation marks omitted). In specific terms, the district court found that Chaker's equitable or beneficial interest in the Pampass Pass property, his extensive personal involvement in the rental process, and the context of his representations in the March 2007 bankruptcy hearing made his literal truth defense untenable and his "legal title" argument unpersuasive. We affirm these findings as supported by substantial evidence. *See id.*

16

No. 14-20026

## CONCLUSION

After careful review of the record and Chaker's arguments, we reject his constructive amendment arguments and conclude that the district court's rejection of his literal truth argument is supported by substantial evidence.

AFFIRMED.