# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-11237

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

COMFORT GATES; GODWIN UMOTONG,

Defendants - Appellants

United States Court of Appeals
Fifth Circuit

**FILED**

September 10, 2015

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CR-308

Before STEWART, Chief Judge, and JOLLY and GRAVES, Circuit Judges.

PER CURIAM:*

 After a jury trial, Defendants-Appellants Comfort Gates (Gates) and Godwin Umotong (Umotong) were convicted of conspiracy to commit healthcare fraud under 18 U.S.C. § 1349, and several substantive counts of healthcare fraud under 18 U.S.C. §§ 1347 and 2, for their participation in an elaborate scheme to defraud Medicare by billing for services that were never

---

 * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-11237

performed. Defendants-Appellants now challenge their convictions on appeal. We AFFIRM.

I.

This case involves a complex scheme to fraudulently bill Medicare for services that were never performed. The scheme was devised by Osvanna Agopian (Agopian), who had twice been convicted of healthcare fraud, and carried out by several "foot soldiers," including Defendants-Appellants Gates and Umotong. To effectuate her scheme, Agopian opened two clinics—Medic in Houston, Texas, around July 2009, and Euless Healthcare Corporation (EHC) located in Euless, Texas, a Dallas suburb, around April 2010 (collectively, the Clinics). The Clinics operated as "false-front" clinics: medical operations that bill Medicare for services that are not actually performed. The Clinics were Level 3.0 false fronts, which are the hardest for Medicare to detect because of the sophisticated means, such as visiting actual patients and maintaining patient files, employed to create the illusion of legitimacy.

Agopian's scheme went as follows: The Clinics recruited patients from legitimate home healthcare agencies that would send over a patient's information. To bill Medicare for home visits, home healthcare providers need a doctor or a physician's assistant (P.A.) under a doctor's supervision to certify that such home visits are necessary. Though each clinic had a licensed doctor on staff, Agopian would send employees like Gates and Umotong, who held foreign medical credentials, to the patients' homes to conduct home-health assessments for a licensed clinic doctor to later certify. Agopian instructed the employees to wear lab coats or scrubs so that patients would recognize them as medical professionals and be more willing to allow them into their homes. She further instructed the employees to tell patients that they were P.A.s from the doctor's office.

2

No. 13-11237

Once in a patient's home, the employees, often working in pairs, would collect the patient's information that would later be used for billing. After collecting this information, one employee, usually the technician, would take vital signs, while the other, usually the P.A., would conduct a physical checkup and order the diagnostic tests. These tests were never performed. Instead, Agopian purchased fake diagnostic test results from a diagnostic company.

After conducting patient visits, the employees would return to either Medic or EHC, where they were responsible for completing several forms, which included ordering diagnostic tests, to be placed in the patient's file. A clinic doctor would then sign the forms authorizing tests that were never performed, and Agopian would use those forms to request reimbursements from Medicare. Through this fraudulent scheme, the Clinics received over $1.3 million for office visits and diagnostic tests that never occurred.

By way of the Superseding Indictment, the Government charged Gates, Umotong, Agopian, and several co-conspirators not part of this appeal, with one count of conspiracy to commit health care fraud under 18 U.S.C. § 1349 for their respective roles in the complex scheme to defraud Medicare. Gates was charged with four substantive counts and Umotong with six substantive counts of healthcare fraud under 18 U.S.C. §§ 1347 and 2.[1] Agopian, the architect of the fraudulent scheme, pled guilty to the charges levied against her in the Superseding Indictment. Gates and Umotong, with co-defendants Tolulope Labeodan (Labeodan) and Vagharshak Smbatyan (Smbatyan),[2] elected to

---

[1] The Government dismissed one substantive count of healthcare fraud (Count 7) against both Gates and Umotong at trial.

[2] Smbatyan, Agopian's husband whom she persuaded to be the purported owner of Medic, was charged with one count of making a false statement to a government agency in violation of 18 U.S.C. § 1001. Labeodan was charged with one count of conspiracy to commit healthcare fraud and one substantive count of healthcare fraud.

3

proceed to trial, at which Agopian and other co-conspirators testified for the Government.

Based on trial evidence demonstrating Gates's and Umotong's participation in Agopian's scheme,[3] the jury found them guilty of conspiracy and the substantive counts of healthcare fraud for which they were charged. After the verdict, both Defendants-Appellants renewed previously urged Rule 29 motions for acquittal. After holding a hearing, the district court issued a written order denying Gates's and Umotong's Rule 29 motions for acquittal and Rule 33 motions for a new trial. Though the district court noted that the evidence adduced at trial against Gates and Umotong was "thin," the court ultimately found that it was sufficient to sustain the jury's verdict on the conspiracy charge and "[did] not weigh so heavily against the verdict that a new trial [was] in order."[4] Defendants-Appellants were each sentenced to 72 months imprisonment.[5]

On appeal, both Gates and Umotong challenge the district court's jury instructions, arguing that they constructively amended the indictment in violation of the Fifth Amendment.[6] Umotong independently challenges the district court's: (1) denial of his Rule 29 motion for acquittal; (2) denial of his Rule 33 motion for a new trial; and (3) refusal to include an overt-act requirement in its charge to the jury.[7]

---

[3] The facts supporting Gates's and Umotong's involvement will be discussed where appropriate *infra*.

[4] For similar reasons, the district court sustained the convictions on the substantive charges of health care fraud and denied Defendants-Appellants motions for a new trial as to those charges.

[5] Neither Defendant-Appellant challenges their sentence on appeal.

[6] Umotong has adopted the arguments made in Gates's brief in support of a constructive amendment.

[7] As Umotong acknowledges, our precedent, which provides that 18 U.S.C. § 1349 does not contain an overt-act requirement, forecloses this issue on appeal. *See United States v.*

No. 13-11237

II.

A.

Defendants-Appellants argue that the district court constructively amended the indictment when it permitted trial evidence and the prosecutor's remarks in closing argument to prove a misrepresentation not charged in the indictment, and refused to include their proposed curative instruction[8] in its jury charge. This court reviews a claim of constructive amendment de novo. *United States v. Jara-Favela*, 686 F.3d 289, 299 (5th Cir. 2012).

"The Fifth Amendment guarantees that a criminal defendant will be tried only on charges alleged in a grand jury indictment." *United States v. Arlen*, 947 F.2d 139, 144 (5th Cir. 1991). "It is a long-established principle of our criminal justice system that, after an indictment has been returned, its charges may not be broadened through amendment except by the grand jury itself." *United States v. Hoover*, 467 F.3d 496, 500 (5th Cir. 2006) (internal quotation marks and citation omitted). "A constructive amendment occurs when it permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that with which [he or] she was charged." *United States v.*

---

*Njoku*, 737 F.3d 55, 67–68 (5th Cir. 2013); *United States v. Jones*, 733 F.3d 574, 584 (5th Cir. 2013); *see also United States v. Turner*, 561 F. App'x 312, 316 (5th Cir. 2014). Accordingly, we do not discuss this issue further.

[8] Defendants-Appellants do not separately challenge the district court's refusal to include this proposed jury instruction. Defendants-Appellants do, however, contend that the district court erred by including an "Unanimity of Theory" instruction in its jury charge but they failed to cite to any legal authority to support their contentions. Accordingly, they have waived any challenge to the district court's "Unanimity of Theory" instruction. *See L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994) (citation omitted); Fed. R. App. P. 28(a)(8).

5

No. 13-11237

*McMillan*, 600 F.3d 434, 451 (5th Cir. 2010) (internal quotation marks and citation omitted).

Defendants-Appellants contend that, though they were charged for one fraudulent misrepresentation—billing Medicare for office visits and diagnostic tests that were never performed—the trial evidence focused almost exclusively on another fraudulent misrepresentation: misrepresenting their medical credentials. Accordingly, they argue that the district court should have specifically instructed the jury that a conviction for conspiracy required "proof beyond a reasonable doubt of the specific misrepresentation charged in the indictment relating to the performance of office visits and diagnostic tests." We disagree.

While the Government elicited testimony from several witnesses that Defendants-Appellants misrepresented their medical credentials, we agree with the Government's contention that such evidence was permissible because it was probative of the co-conspirators' fraudulent scheme. *See McMillian*, 600 F.3d at 451 (rejecting defendants' argument that the admission of evidence related to an uncharged misrepresentation, without the requested instruction, allowed the jury to convict based on this uncharged factual basis when the admitted evidence was probative of the charged fraud). It further explained to the jurors how complex Level 3.0 false-front clinics operate generally, and how the Clinics operated specifically, and it supported the Government's argument that the scheme could not have been accomplished but for the Defendants-Appellants' participation.

More importantly, the district court employed many of the curative measures recognized by our court to protect against a constructive amendment of the indictment, such as: instructing the jury to only consider the crime charged in the indictment; instructing the jury that the Defendants-Appellants

6

No. 13-11237

were not on trial for any offense not alleged in the indictment; including the language from the Superseding Indictment in the jury charge; and providing the jury with a copy of the indictment for their deliberations. *See United States v. Leahy*, 82 F.3d 624, 631–32 (5th Cir. 1996); *see also United States v. Holley*, 23 F.3d 902, 912 (5th Cir. 1994) ("All of [the defendant's] contentions must fail because the district court instructed the jury that it was to consider only the crime that was charged in the indictment."). Because jurors are presumed to follow the court's instructions, *see United States v. Bieganowski*, 313 F.3d 264, 288 (5th Cir. 2002), and the district court properly instructed the jury, we conclude that the jury convicted Defendants-Appellants based on the fraud alleged in the Superseding Indictment. This conclusion is buttressed by the fact that Defendants-Appellants' co-defendant Labeodan was acquitted of the conspiracy charge, despite the presentation of evidence that he misrepresented his medical credentials. *See Bieganowski*, 313 F.3d at 288 ("Where, as here, a jury returns a verdict of not guilty on some counts and as to some defendants, the presumption that the jury followed the court's instructions is even stronger." (internal quotation marks and citation omitted)).

For these reasons, we conclude that no constructive amendment of the indictment occurred.

## B.

Umotong next challenges the district court's denial of his motion for acquittal. He argues that the trial evidence was insufficient to prove that he knowingly and willfully participated in the conspiracy. We review preserved sufficiency-of-the-evidence challenges de novo. *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012).

No. 13-11237

When reviewing the sufficiency of the evidence, a court must determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Moreno-Gonzalez*, 662 F.3d 369, 372 (5th Cir. 2011) (citation omitted). Evidence must be viewed "in the light most favorable to the verdict." *Id.* (citation omitted). Moreover, this court must "accept[] all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict." *Id.* (citation omitted).

To prove a conspiracy to commit health care fraud under § 1349, the government must prove beyond a reasonable doubt that: "(1) two or more persons made an agreement to commit health care fraud; (2) that the defendant knew the unlawful purpose of the agreement; and (3) that the defendant joined in the agreement willfully, that is, with the intent to further the unlawful purpose." *Grant*, 683 F.3d at 643. "Direct evidence of a conspiracy is unnecessary; each element may be inferred from circumstantial evidence." *United States v. Willett*, 751 F.3d 335, 339 (5th Cir. 2014) (internal quotation marks and citation omitted). "An agreement may be inferred from concert of action, voluntary participation may be inferred from a collection of circumstances, and knowledge may be inferred from surrounding circumstances." *Grant*, 683 F.3d at 643 (internal quotation marks and citation omitted). "However, the government must do more than pile inference upon inference upon which to base a conspiracy charge." *Id.* at 642 (internal quotation marks and citation omitted).

We conclude the trial evidence was sufficient to prove that Umotong knowingly and willfully participated in the conspiracy to commit healthcare fraud. First, without the active participation of Umotong and others, Agopian's scheme could not have succeeded. Agopian testified that to effectuate her scheme, she instructed Umotong and other employees to pose as licensed P.A.'s

from a doctor's office to gain entry into patients' homes. She further instructed employees like Umotong to collect the patients' information and fill out forms, which included ordering diagnostic tests that were later used to fraudulently bill Medicare. Agopian testified that it was "common knowledge" that the tests were never performed, and further known that in order for her to pay the employees, the diagnostic tests needed to be ordered. Leslie Omagbemi, a co-conspirator who pled guilty before trial, testified that he accompanied Umotong on several patient visits and witnessed Umotong follow Agopian's instructions by misrepresenting himself as a doctor and ordering diagnostic tests that would never be performed.

Second, it was reasonable for the jury to infer Umotong's knowing and willful participation in the conspiracy based on his proximity to the fraudulent conduct. *See Willet,* 751 F.3d at 340–41. Trial evidence revealed that Umotong went into patients' homes, performed basic examinations to lend the appearance of legitimacy, ordered tests, and returned to a clinic to complete paperwork used to fraudulently bill Medicare. It also revealed that he performed these acts in furtherance of the conspiracy for approximately nine months[9] at both Clinics. Though there is no evidence that Umotong submitted the fraudulent bills to Medicare, "[a] defendant need not have actually submitted the fraudulent documentation to Medica[re] in order to be guilty of health care fraud or conspiracy to commit health care fraud." *United States v. Umawa Oke Imo,* 739 F.3d 226, 235 (5th Cir. 2014).

---

[9] At oral argument, the parties disputed the length of time Umotong spent working for the Clinics. We base our approximation on the testimony of Agopian and Special Agent Timothy DeFrancesca, a health care fraud investigator for the U.S. Department of Health and Human Services, which shows that Umotong worked for the Clinics for nine to ten months.

No. 13-11237

While it may be that, as the district court observed, the evidence against Umotong is "thin," viewing that evidence in the light most favorable to the jury's verdict, it is nevertheless sufficient to sustain Umotong's conviction for conspiracy to commit healthcare fraud.[10]

## C.

Finally, Umotong contends that the district court erred in refusing to grant his motion for a new trial.[11]   Consistent with his constructive amendment argument, Umotong avers that allowing his conviction to stand on an uncharged factual basis constitutes a "miscarriage of justice."   However, because we have concluded that no constructive amendment occurred, the interests of justice do not require that a new trial be granted. *See United States v. Tarango*, 396 F.3d 666, 672–73 (5th Cir. 2005).   Moreover, in light of our conclusion that the evidence is sufficient to sustain Umotong's conviction, the evidence does not "preponderate[] sufficiently heavily against the verdict such that a miscarriage of justice may have occurred." *Id.* at 672 (internal quotation marks and citation omitted).   Accordingly, the district court did not err in denying Umotong's motion for a new trial.

## III.

The district court's judgment is AFFIRMED.

---

[10] Because the evidence is sufficient to sustain the conviction for conspiracy to commit healthcare fraud, it is equally sufficient to sustain the convictions on the substantive counts of healthcare fraud. *See United States v. Dean*, 59 F.3d 1479, 1489 (5th Cir. 1995) ("Under the rule established by the Supreme Court in *Pinkerton v. United States*, 328 U.S. 640 (1946), '[a] party to a conspiracy may be held responsible for a substantive offense committed by a coconspirator in furtherance of a conspiracy, even if that party does not participate in or have any knowledge of the substantive offense.'")

[11] We were unable to locate Umotong's motion for a new trial in the record.   We therefore rely on the district court's representation that he so moved after the verdict.