# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 20, 2025

Lyle W. Cayce
Clerk

No. 22-50910

United States of America,

*Plaintiff—Appellee*,

*versus*

Hector Flores, Jr.,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:22-CR-108-1

_____

Before Stewart and Richman, *Circuit Judges*, and Scholer, *District Judge*.[*]

Per Curiam:[**]

In January 2022, Hector Flores, Jr., and his daughter L.F. traveled to Big Bend National Park. After sustaining a flat tire, they ran out of food, and L.F. went several days without eating. Flores was subsequently charged in

_____

[*] United States District Judge for the Northern District of Texas, sitting by designation.

[**] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

federal court with child endangerment under Texas Penal Code § 22.041, assimilated through 18 U.S.C. § 13.  The jury returned a guilty verdict, and Flores was sentenced to five years of probation as well as a special assessment of $100.

Flores argues that his conviction should be vacated for three reasons. He contends that there was insufficient evidence to support his conviction, the Government constructively amended the indictment, and there was prosecutorial misconduct.  We affirm the district court's judgment.

# I

## A

At the time of the offense, Flores was a single parent to his daughter L.F.  While living in Fort Stockton, Texas, L.F. attended the Fort Stockton Intermediate School, and Flores worked at a grocery store.  According to coworkers, Flores often spoke about wanting to "live off the grid" and to move to Mexico with his daughter.  In 2020 and 2021, Flores checked out several books from the public library that pertained to wilderness survival.

On January 4, 2022, Flores withdrew L.F. from school, claiming they were moving to San Antonio and that he would enroll her there.  He did not enroll her in another school.

Twenty-four days later, on January 28, Flores and L.F. traveled to Big Bend National Park, which spans 800,000 acres and borders Mexico.  While on a rough road, they drove into a wash and sustained a flat tire.  Ranger Megan Hoyt testified that the wash was "a sandy bottom where water travels" and "was within a valley with mountain peaks on either side." Flores and L.F. constructed a makeshift campsite around the vehicle and stayed there for several days.  They then started to walk to Boquillas, a town in Mexico.  They took a survival book and three backpacks of supplies.  The backpacks contained vitamins, honey, sunflower seeds, fish oils, omega-3s,

two jars of beans, a loaf of bread, peanut butter, four cans of Spam, a large can of sardines, and two gallon jugs of water.

About three days into their walk, Flores and L.F. ran out of food,[1] and Flores gathered berries for them to eat.  From that point, until they were found on February 14, L.F. estimated that they consumed approximately half a gallon of berries (about thirty berries) a day.  They also ate "a couple of minnows and a frog" (they found the frog dead in cold water), four granola bars they obtained from hikers, and after crossing the Rio Grande River, a wrap and an orange given to them by kayakers.  At some point in the journey, Flores and L.F. went without food, though the evidence was conflicting as to how many days they had nothing to eat.  During their time in the park, temperatures dropped to lows of 20 degrees Fahrenheit.  Aside from being hungry, L.F. was not injured.

On February 5, park rangers learned of an abandoned pickup truck located in a wash within a valley.  The rangers examined the truck and campsite and discovered numerous objects, including a laptop, a wallet, clothing, empty food containers, an animal cage, and documents (including tax records, birth certificates, L.F.'s school records, and employment paperwork).

The rangers commenced a search and rescue mission that involved nearly all the staff at Big Bend National Park.  On February 13, a Mexican citizen contacted the rangers and reported that he had seen Flores and L.F.  The rangers concluded that Flores and L.F. must have crossed the Rio Grande River.  The following day, on February 14, Rangers Katelyn Mahoney and Michael Ryan hiked up a hill to obtain a vantage point of the area where

---

[1] When they ran out of water, Flores and L.F. purified rainwater using tablets they brought with them.

Flores and L.F. were believed to be camping. They witnessed an adolescent (who did not appear to be emaciated) gathering firewood and took photographs of Flores and L.F. The location of their campsite was about twenty miles from Flores's abandoned truck.

Also on February 14, rangers learned that L.F. was in the custody of Mexican authorities. Rangers Eric Herndon and Mahoney traveled to the border crossing between the United States and the town of Boquillas to assist in bringing L.F. back to the United States. The Mexican authorities told Ranger Mahoney that L.F. was uninjured when they found her. When Ranger Herndon saw L.F., he believed that she had lost weight when compared to an undated photograph.

Rangers Herndon and Mahoney did not take L.F. to a physician but instead transferred her to the custody of Texas Child Protective Services. L.F. told the rangers about her "survival camping" with Flores, including what they ate and when they ran out of food. At no point during the journey or rescue did Flores or L.F. request aid from the hikers, kayakers, or police helicopters searching for them.

**B**

Flores was indicted for endangering a child under Texas Penal Code § 22.041, assimilated through the Assimilative Crimes Act, 18 U.S.C. § 13, because the offense allegedly occurred on federal lands (Big Bend National Park). Consequently, "the Texas statute defines the crime, even though this remains a federal criminal prosecution."[2]

---

[2] *United States v. Webb*, 747 F.2d 278, 280 (5th Cir. 1984).

No. 22-50910

Specifically, the indictment charged:

> [T]he Defendant, Hector Flores, Jr., did then and there intentionally, knowingly, recklessly, or with criminal negligence, engage in conduct, by omission, that placed L.F., a child younger than 15 years of age, in imminent danger of death, bodily injury, or physical or mental impairment, by not providing adequate food, and the defendant did not voluntarily deliver the child to a designated emergency infant care facility provider . . . .

Flores pleaded not guilty, and the case proceeded to trial.

The Government called nine witnesses who testified about the relationship between Flores and L.F., the search and rescue mission, the conditions in the national park, and the food they consumed on their journey. Ranger Mahoney noted that the area where Flores and L.F. traveled is so rugged that permits are required for overnight stays. To obtain permits, visitors must produce a well-planned itinerary and demonstrate that they have an adequate supply of food and water. Ranger Mahoney recommended that an adult male would require one-and-a-half pounds of food and one gallon of water per day and that a child would require one pound of food and two liters of water per day. Ranger Alyssa Van Schmus discussed the lack of food sources on the route, especially because Flores and L.F. traveled during a winter drought. Ranger Van Schmus explained that few berries were available at that time, and the ones that were present on the route were characterized by their small size and limited nutritional value.

After the Government rested its case, the defense moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The district court denied the motion. Following testimony from its own witness, the defense renewed its Rule 29 motion. At the conclusion of the Government's closing argument, the defense again renewed its Rule 29 motion, and that motion was denied.

No. 22-50910

The jury returned a guilty verdict. The district court imposed a sentence of five years of probation and a special assessment of $100. Flores timely appealed.

## II

Because Flores timely moved for a judgment of acquittal, this court reviews his challenge to the sufficiency of the evidence de novo.[3] However, "[w]e review the jury's finding of guilt under a standard that is highly deferential to the verdict."[4] The central inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[5] In other words, our court evaluates whether the jury made a rational decision that is supported by substantial evidence, not whether this court would have made the same.[6] Our court draws reasonable inferences, views evidence, and accepts credibility determinations in favor of the verdict.[7] Consequently, "[i]t is by now well settled that a defendant

---

[3] *See United States v. Carbins*, 882 F.3d 557, 562-63 (5th Cir. 2018) (stating that review is de novo when a defendant preserves his challenge); *United States v. Davis*, 735 F.3d 194, 198 (5th Cir. 2013) (same); *United States v. Carbajal*, 290 F.3d 277, 289 (5th Cir. 2002) (same).

[4] *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002).

[5] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[6] *See Woodby v. INS*, 385 U.S. 276, 282 (1966) ("[A]n appellate court in a criminal case ordinarily does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt, but whether the judgment is supported by substantial evidence."); *United States v. Nolasco-Rosas*, 286 F.3d 762, 765 (5th Cir. 2002) (per curiam) ("We do not consider whether the jury correctly determined innocence or guilt, but whether the jury made a rational decision.").

[7] *See United States v. Lage*, 183 F.3d 374, 382 (5th Cir. 1999) ("We review a claim that the evidence is insufficient to support a conviction in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the jury.").

seeking reversal on the basis of insufficient evidence swims upstream."[8]  We apply this deferential standard of review to all three elements (inadequate food, imminent danger of bodily injury, and mens rea) of child endangerment under Texas Penal Code § 22.041.

**A**

The parties debate whether the Government presented sufficient evidence for a jury to conclude Flores failed to provided L.F. adequate food. We conclude it did.

The jury heard testimony from L.F. about what food she consumed as well as testimony from park rangers about what quantity of food would be necessary for the journey, as set forth earlier in this opinion.

As to adequacy of food, the jury was free to credit Ranger Mahoney's testimony that a child would require one pound of food per day on a trip like the one she and her father undertook.  The jury could have inferred that L.F.'s food supply, intake, or both were inadequate, especially in light of Ranger Van Schmus's testimony that the berries on the route were characterized by their small size and limited nutritional value.  While L.F. testified at trial that they did not eat for about one to two days, Ranger Mahoney testified that L.F. told her they had not eaten for four days.  The jury could have credited Ranger Mahoney's testimony over L.F.'s testimony as the jury "retains the sole authority to weigh conflicting evidence and evaluate the credibility of the witnesses."[9]

---

[8] *United States v. Mulderig*, 120 F.3d 534, 546 (5th Cir. 1997).

[9] *United States v. Holmes*, 406 F.3d 337, 351 (5th Cir. 2005) (internal quotation marks and citation omitted).

No. 22-50910

The Government relied on Ranger Herndon's testimony that when he saw L.F. in person, she appeared to have lost weight when compared to an undated photograph. The jury was free to draw upon such circumstantial evidence to conclude that Flores did not provide L.F. with adequate food.[10]

Accordingly, considering the entire record, a rational jury could find beyond a reasonable doubt that Flores failed to provide L.F. with adequate food.

**B**

Flores and the Government dispute whether he placed L.F. in imminent danger of bodily injury. We must determine the meaning of "imminent danger" and of "bodily injury" under Texas law.

Texas courts have defined "imminent" as "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near."[11] Further, "to be 'imminent' for purposes of imposing responsibility pursuant to Penal Code § 22.041(c), the situation must be immediate and actual, not potential or future, at the moment of the act or omission by the defendant."[12] To be convicted under this statute, "[i]t is not sufficient that the accused placed the child in a situation that is potentially dangerous. The accused's conduct must threaten the child with immediate, impending death, bodily injury, or impairment."[13] Ultimately, "[t]he determination of

---

[10] *See United States v. Burton*, 126 F.3d 666, 670 (5th Cir. 1997) ("The standard of review is the same regardless whether the evidence is direct or circumstantial.").

[11] *Elder v. State*, 993 S.W.2d 229, 230 (Tex. App.—San Antonio 1999, no pet.) (quoting *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989)).

[12] *Newsom v. B.B.*, 306 S.W.3d 910, 918 (Tex. App.—Beaumont 2010, pet. denied).

[13] *Millslagle v. State*, 81 S.W.3d 895, 898 (Tex. App.—Austin 2002, pet. ref'd).

whether a child is in imminent danger is always a fact-intensive inquiry, and th[e] Court may not sit as a thirteenth juror or alternate fact finder."[14]

The definition of "bodily injury" under the Texas Penal Code is "purposefully broad."[15] To this point, the Texas Penal Code broadly defines bodily injury as "physical pain, illness, or any impairment of physical condition."[16] Under this definition, "[a]ny physical pain, however minor, will suffice to establish bodily injury."[17] Further, "[a] fact finder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it."[18]

Texas courts have held that imminence requires more than an abstract threat. For example, in *Moody v. State*,[19] the defendant's young children lived in an unsanitary house, were permitted to play unsupervised in an unfenced yard near a busy road, and were often seen wearing only diapers in cold weather.[20] The court held the evidence was insufficient for conviction because the children only faced "*potentially* dangerous situations" rather

---

[14] *Dahlgren v. State*, No. 05-10-01257-CR, 2012 WL 3064815, at *4 (Tex. App.—Dallas July 30, 2012, no pet.) (mem. op., not designated for publication).

[15] *Contreras v. State*, 54 S.W.3d 898, 903 (Tex. App.—Corpus Christi-Edinburg 2001).

[16] Tex. Penal Code § 1.07(a)(8).

[17] *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012).

[18] *Id.* (quoting *Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.)).

[19] No. 01-03-00685-CR, 2004 WL 1472216 (Tex. App.—Houston [1st Dist.] July 1, 2004, no pet.) (mem. op., not designated for publication).

[20] *Id.* at *2.

than imminent danger.[21] A similar case is *Garcia v. State*,[22] in which a mother was convicted when her child was shivering, had blue lips, and wore only a wet diaper in 58-degree weather.[23] The Texas Court of Criminal Appeals held that no rational jury could have determined that the child was in imminent danger of bodily injury.[24] In reaching this verdict, the court stated that harm to the child was merely a "possibility" because there was no evidence that the child was in the cold for an extended duration.[25]

These cases stand in contrast to *Hernandez v. State*.[26] In that case, the defendant's children lived in a small, crowded house surrounded by numerous animals, mold, animal feces, and insects.[27] The court distinguished *Moody* by noting that medical testimony connected the presence of animal feces, mold, and insects in the home to diseases and illnesses suffered by the children.[28] The court held that this situation met the imminence requirement: "The condition of the home, the presence of multiple animals, and the proximity of B.B. and B.H.'s beds to the multiplicity of insects found in J.H.'s bed placed the danger 'menacingly near' to them with illness and disease 'ready to take place.'"[29]

---

[21] *Id.*

[22] 367 S.W.3d 683 (Tex. Crim. App. 2012).

[23] *Id.* at 688.

[24] *Id.* at 689.

[25] *Id.*

[26] 531 S.W.3d 359 (Tex. App.—Eastland 2017, no pet.).

[27] *Id.* at 360-61.

[28] *Id.* at 365.

[29] *Id.*

No. 22-50910

In the present case, there was sufficient evidence for the jury to find that Flores placed L.F. in imminent danger of bodily injury. The jury could have credited L.F.'s testimony about the small amount of food she consumed as well as her statement to Ranger Mahoney that they had not eaten for four days. There was limited means to procure food because Flores left his wallet in the truck, and the winter drought made food from the land sparse. Under these conditions, a rational jury could conclude that harm to L.F. was imminent rather than merely an abstract possibility as in *Moody*[30] or *Garcia*.[31] L.F's limited food intake occurred for several days, unlike the situation in *Garcia*.[32] There is no indication how or when Flores planned to end their "survival camping." Flores did not ask the hikers or kayakers they encountered on their trek to contact rangers or other authorities for assistance. Accordingly, a rational jury could find beyond a reasonable doubt that Flores placed L.F. in imminent danger of bodily injury or impairment by not providing adequate food while on an extended journey by foot in a hostile, sometimes freezing, environment.

## C

Texas Penal Code § 22.041 criminalizes child endangerment that is committed "intentionally, knowingly, recklessly, or with criminal negligence."[33] The parties debate which elements of the crime the mens rea requirement modifies. Flores argues that child endangerment is a "result-of-

---

[30] *Moody v. State*, No. 01-03-00685-CR, 2004 WL 1472216, at *2 (Tex. App.—Houston [1st Dist.] July 1, 2004, no pet.) (mem. op., not designated for publication).

[31] *Garcia v. State*, 367 S.W.3d 683, 688-89 (Tex. Crim. App. 2012).

[32] *Id.*

[33] Tex. Penal Code § 22.041(c).

conduct" offense while the Government claims it is a "nature-of-conduct" offense. We briefly outline these concepts.

**1**

Result-of-conduct offenses "concern the product of certain conduct."[34] For this type of offense, "the culpable mental state relates not to the nature or circumstances surrounding the charged conduct, but to the result of that conduct."[35] In contrast, nature-of-conduct offenses "are defined by the act or conduct that is punished, regardless of any result that might occur."[36] For such offenses, when "specific acts are criminalized because of their very nature, a culpable mental state must apply to committing the act itself."[37]

We regard child endangerment under § 22.041 as a result-of-conduct offense. Several state cases have declared that § 22.041 is a result-of-conduct offense.[38] Further, the statute includes all four mental states (i.e., intentionally, knowingly, recklessly, or with criminal negligence).[39] Because "the only conduct element that can be the object of all four culpable mental states is 'result of conduct,' the inclusion of all four culpable mental states in the definition of the offense is a strong indication that it is a specific result

---

[34] *Robinson v. State*, 466 S.W.3d 166, 170 (Tex. Crim. App. 2015).

[35] *Aybar v. State*, No. 01-18-00018-CR, 2019 WL 3227066, at *4 (Tex. App.—Houston [1st Dist.] July 18, 2019, pet. ref'd) (mem. op., not designated for publication).

[36] *Robinson*, 466 S.W.3d at 170.

[37] *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989).

[38] *See, e.g.*, *Holloway v. State*, 621 S.W.3d 753, 758 (Tex. App.—Waco 2020, no pet.) ("The gravamen of the offense of endangering a child is therefore the result of conduct."); *Millslagle v. State*, 81 S.W.3d 895, 897 n.1 (Tex. App.—Austin 2002, pet. ref'd) (holding that endangering a child is a result-of-conduct offense).

[39] Tex. Penal Code § 22.041(c).

type of crime."[40]   Additionally, the jury instructions listed § 22.041 as a result-of-conduct offense, and the Government did not object.  Accordingly, we assess whether a rational jury could find beyond a reasonable doubt that Flores intentionally, knowingly, recklessly, or with criminal negligence placed L.F. in imminent danger of bodily injury by not supplying adequate food.

**2**

We conclude the Government produced sufficient evidence for a rational jury to find that the mens rea requirement was met beyond a reasonable doubt.  Flores knew how much food they brought with them.  As Flores and L.F. shared food, he knew how much his daughter had consumed and how long they went between eating.  When they turned to berries as their source of nourishment, Flores removed the thorns from the berries and provided them for L.F., so he was aware of how many she was able to eat.  If the jury credited Ranger Van Schmus's testimony about the small size of the berries, the jury could have made the inference that Flores disregarded the risks of only providing limited nutritional value.  As a single father in charge of raising his daughter and providing her meals, Flores knew how much L.F. normally ate and would have likely realized the amount she was eating on the trip paled in comparison.  Even with this knowledge, Flores did not seek help from the hikers, kayakers, or police helicopters despite being aware they had run out of food.  From this evidence, a rational jury could infer that Flores consciously disregarded a substantial and unjustifiable risk that his failure to

---

[40] *Millslagle*, 81 S.W.3d at 897 n.1.

provide L.F. with adequate food placed her in imminent danger of a bodily injury.[41]  The mens rea requirement was met.

### III

Flores contends that his conviction should be vacated because the Government constructively amended the indictment in its closing argument. Flores raised this objection during trial, and we therefore review de novo.[42]

The Fifth Amendment "guarantees a criminal defendant the right to be tried only on charges presented in an indictment returned by a grand jury."[43]  Consequently, "[o]nly the grand jury can amend an indictment to broaden it."[44]  The constructive amendment of an indictment violates a defendant's Fifth Amendment rights.[45]

A constructive amendment of the indictment occurs when "the government changes its theory at trial, allowing the jury to convict on a broader basis than that alleged in the indictment, or when the government

---

[41] *See Suarez v. State*, No. 05-03-00096-CR, 2003 WL 23025024, at *3 (Tex. App.—Dallas Dec. 30, 2003, pet. ref'd) (not designated for publication) ("In this case, recklessness would exist if she was aware of, but consciously disregarded, a substantial and unjustifiable risk that her failure to supervise A.E. placed A.E. in imminent danger of death, bodily injury, or physical or mental impairment.").

[42] Flores preserved the error through his attorney's numerous objections and his motion in limine opposing the Government's use of other bases (besides deprivation of food) for the conviction.

[43] *United States v. Ramirez*, 670 F.2d 27, 28 (5th Cir. 1982).

[44] *United States v. Doucet*, 994 F.2d 169, 172 (5th Cir. 1993); *see also Stirone v. United States*, 361 U.S. 212, 215-16 (1960) ("[I]t has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself.").

[45] *United States v. Rubio*, 321 F.3d 517, 521 (5th Cir. 2003) ("A constructive amendment violates the defendant's right under the Fifth Amendment to a grand jury indictment.").

proves an essential element of the crime on an alternate basis authorized by the statute but not charged in the indictment."[46]  Constructive amendments can be either implicit or explicit and can arise through the actions of the prosecutor (offering evidence at trial) or the actions of the court (through jury instructions).[47]  While constructive amendments require reversal per se[48] without a showing of prejudice,[49] mere variations between the proof and the indictment do not.[50]

Flores argues the Government constructively amended the indictment through its closing argument.  In that argument, the Government discussed criminal negligence and told the jury the following:

> And what standard is of an ordinary person, an ordinary person like you—so would you put your child through that same thing?  And if you would, then yeah, go ahead and walk him, find him not guilty.  But I don't think any parent would say that this was adequate.

---

[46] *United States v. Stanford*, 805 F.3d 557, 565 (5th Cir. 2015).

[47] *See United States v. Millet*, 123 F.3d 268, 272 (5th Cir. 1997) ("An indictment can be constructively amended either by evidence offered at trial or by jury instruction. . . . The constructive amendment can be either explicit or implicit."); *Doucet*, 994 F.2d at 172 ("Moreover, it is clear that the indictment may be amended constructively by the actions of either the court or the prosecutor.").

[48] *See United States v. Lockhart*, 844 F.3d 501, 514 (5th Cir. 2016) ("If we conclude that there has been a constructive amendment, we must reverse the defendant's conviction.").

[49] *United States v. Thompson*, 647 F.3d 180, 184 (5th Cir. 2011) ("Where this occurs, a finding of prejudice is not necessary to establish a constitutional violation.").

[50] *United States v. Young*, 730 F.2d 221, 223 (5th Cir. 1984) ("[C]ourts distinguish between constructive amendments of the indictment, which are reversible *per se*, and variances between indictment and proof, which are evaluated under the harmless error doctrine.").

The defense objected "to argument contrary to the charge."  The district court overruled the objection: "The attorneys can—the jury will remember the evidence from when you heard it.  What the attorneys say is not evidence.  And they're making their arguments."

After another objection, the Government further discussed Flores's parenting.  Specifically, the Government argued:

> One of the things too is you should try to give your child the best schooling.  But what did this defendant do?  When it's cold in January, he withdrew his kid.  He told them he was going to San Antonio.  He didn't tell them he was going to Mexico.

The defense objected by stating this was a constructive amendment of the indictment.[51]  The district court again overruled the objection: "The attorneys are making their arguments.  The jury will remember the evidence.  What the attorneys state is not evidence."

The Government then discussed the importance of providing proper shelter.  The Government referenced an exhibit that showed the discarded items by the truck and stated: "Does this look like shelter to you?  This is how they were living.  Would a parent subject their child to be living like this for 17 plus days?"  The defense again objected by stating this was a constructive amendment of the indictment.[52]  The Government continued its closing argument as the district court instructed the jury: "The attorneys are making their argument.  The jury will listen to the evidence but at the

---

[51] This objection was incorrectly transcribed from the recording as "Construct within the indictment."

[52] This objection also was incorrectly transcribed from the recording as "Construct within the indictment."

same time, you understand that the evidence was presented to you during the trial. This is not evidence what the lawyers say."

The Government concluded its closing argument by stating the following:

> Is this keeping your child safe wandering out while the school year is going on, out in the desert? Is that keeping your child safe? Giving your child an adequate home? Keeping them safe, giving them adequate care, giving them adequate water— adequate food?

Citing these statements, Flores contends that the Government's "only theory in the indictment" was that he failed to provide L.F. with adequate food. Flores asserts that the Government urged conviction in its closing argument on the additional bases that he did not provide adequate shelter for his daughter and took L.F. on a trip during the school year. Flores argues that the curative instructions offered by the district court (telling the jury that the Government's arguments were not evidence) were insufficient.

The Government contends that "the prosecutors properly summarized the facts surrounding the offense, responded to the arguments Appellant made during closing, and assisted the jury in showing how the evidence supported each element of the crime, including the element of the defendant's culpable mental state." The Government also cites the jury instructions, which properly told the jury to consider only the crime charged in the indictment. Lastly, the Government stresses the adequacy of the district court's curative instructions.

We conclude that the comments made during the prosecutor's closing argument did not constitute a constructive amendment. Throughout the trial, the Government relied on a consistent theory (i.e., inadequate food). In several of our cases, we held that reliance on a single theory indicates that

there was no constructive amendment.[53]  For example, in *United States v. Thompson*,[54] the defendant argued there was a constructive amendment of the indictment because the indictment identified one party as the entity deprived of its property, but at trial, the Government identified another party deprived of his property.[55]  Our court rejected this argument because the two property deprivations were interrelated, and the evidence "explained the *modus operandi.*"[56]  To this point, our court held: "[T]he government did not maintain two alternative theories—only one of which was charged—and urge the jury to convict upon either of them.  Rather, the government presented a single, consistent theory of conviction throughout" the case.[57]  Here, too, the Government utilized a consistent theory of conviction and drew upon evidence of other factors (such as shelter) to shed light on Flores's mental state.

The jury instructions were not expanded beyond the indictment.  In almost all the cases in which our court has held that a constructive amendment of the indictment occurred, the jury instructions reflected this amendment.[58]

---

[53] *See, e.g.*, *United States v. Greenlaw*, 84 F.4th 325, 358 (5th Cir. 2023) ("[W]e see no indication, outside of this singular statement, that would suggest that the Government altered its theory from what was alleged in the indictment.").

[54] 647 F.3d 180 (5th Cir. 2011).

[55] *Id.* at 184.

[56] *Id.* at 185.

[57] *Id.* at 186.

[58] *See, e.g.*, *United States v. Lockhart*, 844 F.3d 501, 516 (5th Cir. 2016) (vacating and remanding on a particular count because the jury instructions allowed conviction on an alternative basis not charged in the indictment); *United States v. Hoover*, 467 F.3d 496, 502 (5th Cir. 2006) ("However, based on the trial court's jury instructions, the government could have sustained a conviction by showing that [the defendant] knew that his statement was false for any reason, rather than being limited to the reason provided in the

No. 22-50910

## IV

Flores argues that the Government's statement during its closing argument allegedly urging conviction because Flores took L.F. on a trip during the school year constitutes prosecutorial misconduct. Flores asserts this comment "urged conviction for other bad acts—exceeding those acts that fell within the ambit of the statute." He further contends that this comment affected his right to a fair trial. The Government counters that the district court's curative instructions (reminding the jury that the prosecutor's closing argument did not constitute evidence) "cures any alleged harm from a prosecutor's improper remarks during closing argument."

A criminal defendant bears a substantial burden in demonstrating that prosecutorial improprieties constitute reversible error.[59] The Supreme Court has instructed that "a criminal conviction is not to be lightly

---

indictment."); *United States v. Chambers*, 408 F.3d 237, 247 (5th Cir. 2005) (reversing the conviction due to a constructive amendment of the indictment in the jury instructions); *United States v. Doucet*, 994 F.2d 169, 173 (5th Cir. 1993) ("The prosecutor compounded the error in these claims by referring the jury each time to the jury charge containing the new definition of a machine gun."); *United States v. Adams*, 778 F.2d 1117, 1121 (5th Cir. 1985) ("In his charge to the jury, the trial judge did not restrict his instructions to the falsity of the name."); *United States v. Salinas*, 654 F.2d 319, 324 (5th Cir. Unit A Aug. 1981) (holding that the trial court's instructions expanded the indictment), *overruled on other grounds by United States v. Adamson*, 700 F.2d 953, 965 n.18 (5th Cir. 1983) (en banc).

[59] *See United States v. Virgen-Moreno*, 265 F.3d 276, 290 (5th Cir. 2001) ("In attempting to establish that a prosecutor's improper comments constitute reversible error, the criminal defendant bears a substantial burden."); *United States v. Bermea*, 30 F.3d 1539, 1563 (5th Cir. 1994) ("A criminal defendant bears a substantial burden when attempting to show that prosecutorial improprieties constitute reversible error."); *United States v. Diaz-Carreon*, 915 F.2d 951, 956 (5th Cir. 1990) ("This Court recognizes, however, that a criminal defendant bears a substantial burden when attempting to demonstrate that improper prosecutorial comments constitute reversible error.").

overturned on the basis of a prosecutor's comments standing alone."[60] Decisions from our circuit grant counsel "much latitude during closing argument."[61] When the defendant objects to the prosecutor's comments at trial (as Flores did), but the district court does not sustain the objection, we review for abuse of discretion.[62]

In evaluating a claim of prosecutorial misconduct, we determine "whether the misconduct casts serious doubt upon the correctness of the jury's verdict."[63] This determination consists of two steps; we first assess whether the prosecutor's comments were improper, and if so, we evaluate whether the remarks affected the defendant's substantial rights.[64] Such an analysis is contextual, considering the comments with respect to the entire trial.[65] Our court weighs three factors in particular: "the magnitude of the

---

[60] *United States v. Young*, 470 U.S. 1, 11 (1985).

[61] *Virgen-Moreno*, 265 F.3d at 290.

[62] *United States v. Greenlaw*, 84 F.4th 325, 359 (5th Cir. 2023).

[63] *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir. 1994).

[64] *See United States v. Lankford*, 196 F.3d 563, 574 (5th Cir. 1999) ("In general, we apply a two-step analysis to charges of prosecutorial misconduct.").

[65] *See Young*, 470 U.S. at 11 ("Nevertheless, a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial."); *United States v. Gracia*, 522 F.3d 597, 603 (5th Cir. 2008) ("When we review the prosecutor's remarks within this context, we conclude that his errors were clear and obvious."); *Virgen-Moreno*, 265 F.3d at 291 ("We test the magnitude of the prejudicial effect of the prosecutor's remarks by considering them in the context of the trial and attempting to ascertain their intended effect."); *United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999) ("In assessing whether statements made by a prosecutor were improper, it is necessary to look at them in context."); *United States v. Bermea*, 30 F.3d 1539, 1563 (5th Cir. 1994) ("After careful review of the conduct complained of by the defendants and the trial as a whole, we conclude that any misconduct did not substantially affect the defendants' right to a fair trial."); *Palmer*, 37 F.3d at 1085 ("The magnitude of the prejudicial effect is tested in part by looking

No. 22-50910

prejudicial effect of the remarks, the efficacy of any cautionary instruction, and the strength of the evidence of the defendant's guilt."[66]  We have previously held that the prosecutor's comments did not prejudice the defendant's substantial rights in cases in which there was strong evidence against the defendant (including multiple witnesses), zealous advocacy on both sides, and curative jury instructions.[67]  With respect to jury instructions, our circuit presumes that a jury will follow the court's instructions "unless there is an overwhelming probability that the jury will be unable to follow the instruction and there is a strong probability that the effect is devastating."[68]

We fail to see how recounting that Flores removed his child from school and took her to the national park amounts to prosecutorial misconduct.  This evidence was relevant to Flores's mens rea, at the least.

\*    \*    \*

For these reasons, the district court's judgment is AFFIRMED.

---

at the prosecutor's remarks in the context of the trial in which they are made and attempting to elucidate their intended effect.").

[66] *Bermea*, 30 F.3d at 1563; *see also United States v. Tomblin*, 46 F.3d 1369, 1390 (5th Cir. 1995) ("Consequently, we examine the effect of any cautionary instructions given by the trial judge and the strength of the evidence suggesting guilt to see if they attenuate the prejudice of the prosecutor's statement."); *Palmer*, 37 F.3d at 1085 (listing the three factors); *United States v. Diaz-Carreon*, 915 F.2d 951, 956 (5th Cir. 1990) (same); *United States v. Goff*, 847 F.2d 149, 165 (5th Cir. 1988) (same).

[67] *See, e.g.*, *Greenlaw*, 84 F.4th at 359 ("Appellants have not met this high standard given that the effect of the statements was insignificant and the evidence against them was strong."); *Gallardo-Trapero*, 185 F.3d at 320-21 ("Given the strident advocacy on both sides of this case and the numerous witnesses, pieces of evidence, and issues placed before the jury, we cannot say that the prosecutor's statements overshadowed what had come before and unduly prejudiced the Appellants' case."); *Tomblin*, 46 F.3d at 1391 ("Also, there was substantial evidence of [the defendant's] guilt, including witness testimony and the taped conversations.").

[68] *United States v. Barksdale-Contreras*, 972 F.2d 111, 116 (5th Cir. 1992).